508 S.E.2d 102

CONSOLIDATION COAL COMPANY,
a Corporation, and Jack E. Lowe,
Plaintiffs Below,

v.

BOSTON OLD COLONY INSURANCE
COMPANY, a Corporation; M.A. He-
ston, Inc., a Corporation; and Omni
Drilling, Inc., a Corporation, Appellees.

CONSOLIDATION COAL COMPANY,
a Corporation, and Jack E. Lowe,
Plaintiffs Below,

v.

BOSTON OLD COLONY INSURANCE
COMPANY, a Corporation,
Appellees.

Nos. 24752, 24753.

Supreme Court of Appeals of
West Virginia.

Submitted March 18, 1998.

Decided July 17, 1998.

Robert M. Steptoe, Jr., Esq., Larry J. Rector, Esq., Lori Dawkins, Esq., Stephen D. Williams, Esq., Steptoe & Johnson, Clarksburg, West Virginia, Robert M. Vukas, Esq., Senior Counsel, CONSOL, Inc., Pittsburgh, Pennsylvania, Attorneys for Plaintiffs Below.

D.C. Offutt, Jr., Esq., Chad S. Lovejoy, Esq., Scott W. Andrews, Esq., Offutt, Fisher & Nord, Huntington, West Virginia, Attorneys for Boston Old Colony.

James A. Liotta, Esq., Tharp, Liotta, Janes & Yokum, Fairmont, West Virginia, Attorney for M.A. Heston & Omni Drilling.

MAYNARD, Justice:

This consolidated action[1] is before this Court upon an appeal of final orders of the Circuit Court of Monongalia County entered upon May 31, 1996, November 27, 1996, and April 9, 1997.[2] Following a coal silo fire at its Loveridge Mine in 1991 and a mine shaft explosion at its Blacksville No. 1 Mine in 1992, appellant, Consolidation Coal Company [hereinafter "CCC"], filed a declaratory judgment action against M.A. Heston, Inc. [hereinafter "Heston"] and Omni Drilling, Inc. [hereinafter "Omni"] seeking to determine its rights and obligations with respect to a policy of insurance issued by Boston Old Colony Insurance Company [hereinafter "BOC"] to Heston and Omni. Appellant now appeals the final orders of the circuit court which granted summary judgment in favor of Heston and Omni concerning claims for indemnity and contribution; granted summary judgment in favor of BOC with respect to the amount of Commercial General Liability [hereinafter "CGL"] and Special Employers Liability [hereinafter "SEL"] coverage; and denied CCC's motion to amend its complaint to add additional claims against BOC, Heston, and Omni including claims for bad faith and unfair settlement practices against BOC.

This Court has before it the petitions for appeal, all matters of record, and the briefs and argument of counsel. For the reasons set forth below, we[3] reverse in part and affirm in part the final orders of the circuit court.

## I.

In 1991 and 1992, CCC and Heston entered into "Blanket Contracts" which estab-

---

1. Although a single declaratory judgment action was filed below, the circuit court's order of May 31, 1996, was appealed to this Court on October 10, 1996. On August 13, 1997, the circuit court's orders of November 27, 1996 and April 9, 1997 were appealed. Both appeals were granted and consolidated by this Court on December 3, 1997.

2. The Order dated April 9, 1997 was entered, by agreement of all parties, *nunc pro tunc* as of December 31, 1996, the last day that now Justice

Larry V. Starcher served as Chief Judge of the Circuit Court of Monongalia County.

3. The Honorable Larry V. Starcher, Justice of the Supreme Court of Appeals of West Virginia, deemed himself disqualified in this proceeding. Accordingly, Chief Justice Robin Jean Davis designated the Honorable John W. Hatcher, Jr., Judge of the Circuit Court of Fayette County, to preside as a member of the Supreme Court of Appeals of West Virginia in this proceeding.

lished and set forth the terms and conditions for work to be performed by Heston as an independent contractor for CCC in the respective years.[4] In addition, CCC and Heston entered into "Purchase Order Contracts" which provided that all work performed under the purchase order was to be governed by and performed in accordance with the terms of the Blanket Contract. The contracts between CCC and Heston were insured pursuant to an insurance policy issued by BOC insuring Heston on the job sites. Heston subcontracted with Omni for assistance in performing its obligations under the contracts. Because of the intrafamily ownership and corporate connection to Heston and its projects, Omni was added to the BOC policy as an additional insured.[5]

On April 3, 1991, two of Heston's employees were injured in a fire while they were performing work at the clean coal silo located at CCC's Loveridge Mine preparation plant. Both employees filed civil actions seeking damages against CCC arising from the injuries they sustained during the silo fire.

On March 19, 1992, Heston and Omni were installing a de-watering pipe into the production shaft at CCC's Blacksville No. 1 Mine when an explosion occurred. As a result of the explosion, four people were killed, and five others were injured. A leased crane located at the work site was also damaged. Consequently, ten civil actions were filed against CCC, Heston, Omni, and others seeking compensatory damages. CCC filed cross-claims and/or third-party claims against Heston, Omni, and their insurer, BOC, demanding contractual indemnity, contribution, insurance coverage, and a defense

in the underlying tort claims. Once the issues were joined, CCC, Heston, Omni, and BOC agreed that they would work together to resolve the underlying tort claims and postpone the litigation of their respective rights and obligations until the tort claims were resolved.

By March 1995, all of the underlying tort claims were settled. The parties then proceeded to litigate the declaratory judgment action which had been filed by CCC on September 27, 1993. At a hearing on March 6, 1996, the circuit court considered a motion in limine filed by Heston and Omni seeking to limit the issues in the declaratory judgment action to a determination of the parties' rights under the insurance policy. Heston and Omni argued that the complaint filed by CCC did not set forth any claims for indemnification and contribution in amounts in excess of the policy limits. The court also considered a motion for partial summary judgment filed by BOC on behalf of Heston and Omni seeking to extinguish CCC's claims for contribution and indemnity on the basis that the parties had previously reached a settlement agreement. BOC asserted that in exchange for its contribution of $1,000,000 toward the settlements in the ten underlying lawsuits resulting from the Blacksville explosion, CCC agreed to drop its claims for contribution and indemnity.

Finding that Heston and Omni's motion in limine was in the nature of a motion for summary judgment, the circuit court concluded that the declaratory judgment action was filed for the purpose of determining the rights and obligations of the parties under

---

4. Although separate contracts were signed for each year, both the 1991 and 1992 Blanket Contracts contained the following language:

> Contractor shall protect, indemnify and defend [CCC], its shareholders, officers, directors and employees, and hold each of them harmless, from and against ... (c) any and all claims, liability, loss or expense (including reasonable attorneys' fees, amounts paid in settlement of litigation, judgments and court costs) for or related to property damage ... and/or injury or death of any person (including, without limitation, any employee or agent of [Heston] or of any subcontractor) caused, or alleged to have been caused, in whole or in part, by any condition of any property owned or leased by

[CCC], by any failure of [Heston], its employees, agents, and subcontractors, to comply with any applicable law, regulation, governmental order, or provision of this Contract, or by any other cause related to performance of work under this Contract, other than gross negligence or willful misconduct attributable to [CCC].

5. As previously mentioned, the BOC policy provided both CGL and SEL coverage. Generally, CGL coverage is designed to protect the insured from losses arising out of business operations. SEL insurance is for liability associated with or arising outside the employer's workers' compensation protection.

the insurance policy only. Alternatively, the circuit court found that the parties had negotiated in good faith and reached an agreement whereby BOC contributed $1,000,000 toward the settlement of the underlying lawsuits and CCC agreed to forego its claims for contribution and indemnity. Consequently, the circuit court granted the motions, and Heston and Omni were dismissed from the case.

Subsequently, on August 19, 1996, the parties appeared for a hearing on CCC's motion to amend its complaint. Among the claims CCC sought to add to its complaint were assertions of bad faith and unfair claims settlement practices on the part of BOC. CCC also sought to determine the applicability of the products completed operation coverage in the BOC insurance policy. The circuit court denied the motion on the basis that CCC had been dilatory in pursuing its claims and that any alleged conduct giving rise to the claims for bad faith was known or should have been known by CCC at the time the original complaint was filed. The court also found that the products completed operation coverage was not applicable because at the time of the Blacksville explosion, work was ongoing, and abandonment, which was necessary to trigger the coverage, did not occur until after the explosion.

On December 30, 1996, the parties appeared for a hearing on cross-motions for summary judgment concerning the remaining issues in the case. CCC argued that it was entitled to an additional $1,000,000 in coverage under the terms of the policy issued to Heston and Omni by BOC with respect to the settlement of the personal injury, property damage, and wrongful death claims that

arose out of the Blacksville explosion.[6] The circuit court found that the insurance policy provided a maximum limit of insurance of $1,000,000 for any one occurrence regardless of the number of insureds. The court further found that the claims related to the Blacksville explosion arose out of a single occurrence. Accordingly, the circuit court granted summary judgment in favor of BOC concluding that there was only $1,000,000 in insurance coverage available. CCC now appeals the circuit court's orders.[7]

## II.

■ As its first assignment of error, CCC contends the circuit court erred in granting summary judgment in favor of Heston and Omni with respect to CCC's claims for indemnification and contribution. In Syllabus Point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) we stated that: "A circuit court's entry of summary judgment is reviewed *de novo.*" *See also* Syllabus Point 4, *Dieter Eng'g Servs., Inc. v. Parkland Dev., Inc.,* 199 W.Va. 48, 483 S.E.2d 48 (1996); Syllabus Point 1, *Smith v. Stacy,* 198 W.Va. 498, 482 S.E.2d 115 (1996).

In this case, the circuit court was presented with a motion for partial summary judgment filed by BOC on behalf of Heston and Omni seeking to extinguish CCC's claims for contribution and indemnity on the basis that the parties had reached a settlement agreement. CCC contends the circuit court erred in finding that the parties reached a settlement agreement because the affidavit of Robert M. Steptoe, Jr., counsel for CCC, indicates that he did not believe that the parties had ever reached an agreement.[8]

---

6. It was undisputed that the policy provided at least $1,000,000 of coverage.

7. CCC also argued that it was entitled to a defense and costs thereof, under the applicable insurance policy. The circuit court granted CCC's motion on this issue. Accordingly, BOC was ordered to pay reasonable attorneys' fees and the costs incurred in the defense of the personal injury, property damages, and wrongful death claims arising out of the Blacksville explosion and the Loveridge silo fire. The court's ruling on this issue was not appealed and is not before this Court.

8. The affidavit of Robert M. Steptoe, Jr., provides, in pertinent part:

> I spoke with Mr. Offutt with regularity concerning the status of the negotiations in each case. During this time period, I did not understand Mr. Offutt or Mr. Liotta, or anyone else, to be of the belief that CCC had released or otherwise waived its contribution and indemnity claims against Heston/Omni. I believe it was understood that the indemnity and contribution claims would be tried as part of this declaratory judgment action, where these claims were already at issue. My impression that CCC's contribution and indemnity claims

BOC contends that its contribution of $1,000,000 toward the settlement of the underlying civil actions was conditioned upon CCC's agreement to release its claims for indemnity and contribution against Heston and Omni. BOC argues that although settlement documents memorializing the settlement agreement were not executed, a lengthy history of correspondence during the settlement negotiations and unexecuted settlement documents evidence an agreement between the parties.

■ Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See also* Syllabus Point 3, *Evans v. Mutual Mining,* 199 W.Va. 526, 485 S.E.2d 695 (1997); Syllabus Point 1, *McClung Invs., Inc. v. Green Valley Community Pub. Serv. Dist.,* 199 W.Va. 490, 485 S.E.2d 434 (1997). We have also observed that:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). *See also* Syllabus Point 2, *Cottrill v. Ranson,* 200 W.Va. 691, 490 S.E.2d 778 (1997); Syllabus point 2, *McGraw v. St. Joseph's Hosp.,* 200 W.Va. 114, 488 S.E.2d 389 (1997).

In *Williams,* we clarified the function of the circuit court at the summary judgment stage. We explained that the circuit court is not " 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " 194 W.Va. at 59, 459 S.E.2d at 336 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)). We further stated that "summary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.' " *Id.* (quoting *Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.), *cert. denied,* 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951)).

■ Upon review of the record, we find that disputed issues of material fact exist as to whether a settlement was, in fact, reached by the parties. As previously noted, CCC's attorney adamantly denies that any consensus was achieved. Mr. Steptoe states in his affidavit that negotiations occurred between representatives of CCC and representatives of BOC concerning the amount of coverage BOC would make available and the issues of contribution and indemnification. While negotiations on these issues were ongoing, the underlying claims were settled. By the time that all of the underlying lawsuits were resolved, Mr. Steptoe believed that the indemnity and contribution claims were still pending and would be tried as part of the declaratory judgment action.

As discussed above, BOC has submitted various letters and other documents in an effort to show that a settlement agreement was reached. CCC contends that the documents prove just the opposite. We agree. It is undisputed that the parties never executed a formal written settlement agreement. The protracted negotiations including numerous telephone calls and correspondence between the parties clearly indicate that genuine issues of fact exist as to whether a settlement agreement was, in fact, ever

were still pending was substantiated by BOC's amended third-party complaint in this declaratory judgment action served on July 25, 1994, where BOC avers at paragraph 19 that 'this declaratory judgment action will affect the

amount of insurance coverage which will be available to all of the above-referenced parties, as well as whether CCC is entitled to indemnification from M.A. Heston, Inc., and Omni Drilling, Inc., and/or Old Boston Colony.

reached. Accordingly, the circuit court erred in granting BOC's motion for partial summary judgment.

Likewise, we find that the circuit court erred in granting summary judgment in favor of Heston and Omni based on their motion in limine which was converted to a motion for summary judgment. Heston and Omni contended that the declaratory judgment action only sought to determine the parties' rights with respect to the insurance policy. Heston and Omni also alleged the complaint failed to set forth claims for indemnification and contribution in excess of the policy limits.

■ We first note that the circuit court had no procedural basis for converting the motion in limine to a motion for summary judgment. Traditionally, summary judgment motions are filed with supporting affidavits, deposition testimony, and/or other documents. *See* W.Va.R.Civ.P. 56. If the circuit court believed that a summary judgment motion was appropriate, the parties should have been permitted to submit briefs, exhibits, and responses thereto. *See* Syllabus Point 1, *Kopelman and Associates, L.C. v. Collins,* 196 W.Va. 489, 473 S.E.2d 910 (1996).

Notwithstanding the procedural error, we find that the complaint gave Heston and Omni fair notice of the claims against them. We have previously held that complaints are to be read liberally in accordance with the notice pleading theory underlying the West Virginia Rules of Civil Procedure. *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 776, 461 S.E.2d 516, 522 (1995). In answering the complaint, Heston and Omni asserted as their first defense: "Indemnity agreements referred to in the Complaint, if any, are not applicable, are ambiguous and contrary to the public policy and the law of the State of West Virginia." As their second defense, Heston and Omni asserted:

> All work performed at the time and place of the explosion referred to in this Complaint was performed under the direct supervision and control of Consolidation Coal Company and its agent, Robert Omear, and as such Consolidation Coal Company is not entitled to any indemnification and/or contribution from defendants M.A. Heston, Inc. and/or Omni Drilling, Inc.

By asserting these defenses, it is evident that Heston and Omni were aware that CCC was seeking indemnity and contribution in amounts in excess of the policy limits. Accordingly, the circuit court erred in granting summary judgment in favor of Heston and Omni on this issue.

### III.

■ CCC next contends the circuit court erred in granting summary judgment in favor of BOC on the issue of the amount of insurance coverage owed to CCC under the applicable insurance policy. CCC asserts the policy provides an additional $1,000,000 in CGL and SEL coverage. CCC makes this argument because both Heston and Omni were separately named insureds under the BOC policy, each was rated individually, and each paid a separate and different premium as though they were separately insured.

BOC maintains that the policy expressly provides a total of only $1,000,000 in insurance coverage. BOC relies upon the following language from "Section III—Limits of Insurance" of the CGL portion of the policy:

> The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
>
> a. Insureds;
>
> b. Claims made or 'suits' brought; or
>
> c. Persons or organizations making claims or bringing 'suits.'

The same language is found in the SEL portion of the policy. BOC avers that the policy is abundantly clear in setting forth the amount of insurance available—$500,000 CGL coverage and $500,000 SEL coverage.

■ At the outset, we note that we are dealing here with a commercial insurance policy involving three separate commercial entities. Compared to the numerous cases relating to automobile insurance policies, which policies usually involve a consumer and a commercial entity, there has been little development of the law relating to the commercial type of insurance in this case. Generally, our cases relating to the limits of

liability coverage have been decided in the framework of automobile insurance. In this case, CCC argues that additional coverage is available because of our body of automobile case law relating to "stacking".[9] While the reference to automobile insurance policies is interesting and shows that counsel is resourceful, the issue of the amount of coverage here should not be determined in the context of automobile insurance.

In case *sub judice*, which involves purely commercial insurance coverage questions, it is undisputed that CCC had an "insured contract" as defined by the BOC policy.[10] CCC and Heston executed blanket contracts in 1991 and 1992 containing indemnity clauses [11] and Heston was insured by BOC pursuant to the policy at issue. Omni was added to the policy as an additional named insured because of the intra-family ownership and corporate connection with Heston and its projects. Nonetheless, Omni was individually rated and paid a different premium as if it were separately insured. Consequently, a clear conflict exists between the payment of separately computed premiums for each business and the limitation of liability clause. For this reason, we find ambiguity in the policy.[12]

■■■ "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syllabus Point 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). In addition, when the policy language is ambiguous, the doctrine of reasonable expectation applies. "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syllabus Point 8, *McMahon, supra.* Moreover, "[w]here ambiguous policy provisions would largely nullify the purpose of indemnifying the insured, the application of those provisions will be severely restricted." Syllabus Point 9, *McMahon, supra.*

■■■ CCC contends that because it had an "insured contact," it stands, for coverage purposes, in the same shoes as Heston and Omni. As earlier noted, the BOC policy defines an "insured contract" as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Therefore, if Heston and Omni were each entitled to $1,000,000 in coverage, CCC is entitled to that aggregate, i.e. $2,000,000. Following the Blacksville explosion, there were separate liability claims against Heston and Omni, each of whom caused the accident. CCC asserts that an examination of the SEL coverage easily demonstrates that Heston and Omni were separate insureds entitled to $1,000,000 aggregate coverage each. According to CCC, it is absurd for BOC to claim that in the Blacksville No. 1 explosion, Heston's employees and Omni's employees were limited to $500,000 joint recovery as if they were all four employed by the same entity. We agree.

■■■ Despite BOC's assertions to the contrary, CCC's expectation of additional coverage in this case is not unreasonable. CCC had an insured contract with Heston and

**9.** "Stacking" is a concept generally used in the context of automobile insurance and refers to multiplying the amount of coverage under the policy per each vehicle covered by the policy. *Payne v. Weston*, 195 W.Va. 502, 505 n. 1, 466 S.E.2d 161, 164 n. 1 (1995).

**10.** The policy defines an "insured contract" as: That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property

damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**11.** See note 4, *supra.*

**12.** We further note that BOC's agent admitted during his deposition that the policy was ambiguous as to whether the limits of liability would be available for each insured if both created an accident.

Omni. In this instance, the BOC policy is ambiguous because it suggests that by virtue of the separately paid premiums, both Heston and Omni have $1,000,000 in coverage. However, if both Heston and Omni caused accidents at the same time, the policy attempts to limit coverage to $1,000,000. If we were to apply this limitation in the policy, we would consequently nullify the meaning and purpose of the "insured contract" provisions of the policy. Therefore, we hold that in a policy for CGL insurance and SEL insurance, when a party has an "insured contract," that party stands in the same shoes as the insured for coverage purposes. Thus, we find that the circuit court erred by finding that the insurance policy provided only $1,000,000 in coverage, instead of $2,000,000 in coverage.

## IV.

As its final assignment of error, CCC contends that the circuit court should have granted its motion to amend the complaint to include, among others, causes of actions for bad faith and unfair claims settlement practices. Rule 15 of the West Virginia Rules of Civil Procedure provides that a party may amend a pleading by leave of the court and "leave shall be freely given when justice so requires." In Syllabus Point 6 of *Perdue v. S.J. Groves and Sons Co.,* 152 W.Va. 222, 161 S.E.2d 250 (1968), we held:

> A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend.

The record indicates that CCC moved to amend the complaint three times. The first motion was denied on the basis of *Jenkins v. J.C. Penney Casualty Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), which precluded claims under the unfair settlement practice provisions of W.Va. 33–11–4(9) (1985) until the underlying suit was resolved. On October 28, 1994, this Court issued its decision in

*State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994), which reversed *Jenkins* and permitted an action against an insurer for bad faith and unfair settlement practices to be joined in the same complaint as the underlying personal injury suit against the insured. Thereafter, on February 26, 1996 and March 28, 1996, CCC filed motions to amend the complaint to add among others, claims for bad faith and unfair claims settlement practices.

In denying CCC's motions to amend, the circuit court found that the plaintiffs had been dilatory in pursuing the claims. We are inclined to agree. The record indicates that CCC waited approximately sixteen months following the *Madden* decision before it filed a motion to amend its complaint. We have previously recognized that "[t]he liberality allowed in amendment of pleadings does not entitle a party to be dilatory in asserting claims or to neglect the case for a long period of time." *Mauck v. City of Martinsburg,* 178 W.Va. 93, 95, 357 S.E.2d 775, 777 (1987) (citation omitted). Consequently, we find that the trial court did not abuse its discretion in denying CCC's motion to amend the complaint to add additional claims including claims for unfair claims settlement practices.

Accordingly, for the reasons set forth above, the May 31, 1997 and April 9, 1997 orders of the Circuit Court of Monongalia County are reversed, and the November 27, 1996 order of the Circuit Court of Monongalia County is affirmed. This case is remanded to the circuit court for further action consistent with this opinion.

Reversed in part, affirmed in part, and remanded.

STARCHER, J., deeming himself disqualified, did not participate in the decision in this case.

JOHN W. HATCHER, Jr., Judge, sitting by special assignment.