543 S.E.2d 664

**WEST VIRGINIA FIRE & CASUALTY COMPANY, Plaintiff Below, Appellee,**

v.

**David MATHEWS, Defendant Below, Appellant.**

**Rodney Loftis, Defendant Below, Appellee.**

**Record No. 27711.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 31, 2000.

Decided Dec. 13, 2000.

Dissenting Opinion of Justice McGraw Jan. 16, 2001.

Christopher J. Heavens, Denese Venza, Heavens Law Offices, Charleston, West Virginia, Attorneys for the Appellant.

Catherine D. Munster, James N. Riley, Tiffany R. Durst, McNeer, Highland, McMunn & Varner, Clarksburg, West Virginia, Attorneys for Appellee West Virginia Fire & Casualty Co.

Johnnie E. Brown, Timothy A. McNeely, Pullin, Knopf, Fowler & Flanagan, Charleston, West Virginia, Attorneys for Appellee Rodney Loftis.

PER CURIAM:

In this appeal from a declaratory judgment action, David Mathews, the insured, asks this Court to reverse two rulings by the Circuit Court of Kanawha County. One order denied Mr. Mathews' motion to alter or amend a judgment granting summary judgment to Mr. Mathews' insurer, West Virginia Fire and Casualty Company, based, in relevant part, upon the circuit court's conclusion that Mr. Mathews was without coverage for his asserted loss, the destruction of a house he owned. The second order dismissed his cross-claim against the contractor who had performed the demolition. We conclude that the circuit court correctly found that Mr. Mathews did not possess coverage for his

asserted loss, and that, because Mr. Mathews failed to comply with the West Virginia Rules of Civil Procedure and was unduly dilatory in attempting to assert his cross-claim, the circuit court did not err in dismissing that claim.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts relevant to this appeal, which were essentially undisputed before the circuit court, are as follows. In March 1997, contractor Rodney Loftis (hereinafter "Loftis"), an appellee herein and defendant below, through his employees, demolished a house owned by David Mathews[1] (hereinafter "Mathews"), appellant herein and a defendant below. Loftis contends that he had been approached by a man purporting to be Mathews, who requested the destruction of the aforementioned house. The two men viewed the property and negotiated a fee for the demolition services to be performed. However, the man who met with Loftis was not Mathews. After Loftis' meeting with the imposter, his employees used a hydraulic excavator to raze the house, and the debris was then hauled away in a dump truck.

At the time the house was destroyed, it was insured under a policy of insurance issued by West Virginia Fire & Casualty Company, an appellee herein and plaintiff below (hereinafter "West Virginia Fire"). The insurance policy was a "Dwelling Fire" policy with extended coverage,[2] which is commonly known as a "named perils" policy.[3]

Following the destruction of the house, Mathews filed a claim with West Virginia Fire seeking coverage for his loss. On June 4, 1997, West Virginia Fire issued a declination letter indicating that there was no coverage for Mathews' claim as he had not purchased coverage for vandalism or malicious mischief. Thereafter, West Virginia Fire filed a declaratory judgment action, pursuant to the West Virginia Uniform Declaratory Judgments Act, W. Va.Code § 55–13–1 *et seq.*, seeking judicial determination of the respective rights, liabilities, duties, responsibilities and legal relationships between itself and Mathews. Mathews subsequently filed his answer to the declaratory judgment complaint and asserted a counterclaim against West Virginia Fire for breach of contract, bad faith, and unfair claims settlement practices.

Sometime after filing its answer to Mathews' counterclaim, West Virginia Fire filed a motion for summary judgment. Mathews then filed his response to West Virginia Fire's summary judgment motion, and, in addition, filed a counter-motion for summary judgment. Thereafter, the circuit court entered an order titled "DECLARATORY JUDGMENT," which was apparently unrelated to the parties' motions for summary

---

1. It appears that this was one of several houses owned by Mathews and was not his primary residence.

2. With regard to the coverage purchased by Mathews, the policy stated, in relevant part:

   **When a Premium for Extended Coverage is shown in the Declarations, Perils 2 through 7 are made part of Perils Insured Against.**
   . . . .
   **6. Vehicles.**
   This peril does not include loss:
   a. caused by a vehicle owned or operated by you or a resident of the Described Location; or
   b. caused by any vehicle to fences, driveways and walks.
   . . . .
   The policy goes on to state:
   **When a Premium for Vandalism or Malicious Mischief is shown in the Declarations, the**

following is made part of **Perils Insured Against.**
   **8. Vandalism or malicious mischief.**
   This peril does not include loss:
   a. to glass or safety glazing material constituting a part of the building other than glass building blocks;
   b. by pilferage, theft, burglary or larceny, but we shall be liable for damage to the building covered caused by burglars; or
   c. to property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.
   The Declarations page of the policy shows that Mathews did not pay a premium for vandalism or malicious mischief.

3. This type of policy may also be referred to as a "specific perils" policy.

judgment.[4] In that order, the court effectively denied both motions for summary judgment and ordered that the declaratory judgment action and the bad faith claims would proceed to trial simultaneously. Subsequently, however, the circuit court agreed to permit West Virginia Fire the opportunity to respond to Mathews' counter-motion for summary judgment.

In addition, on March 22, 1999, West Virginia Fire filed an amended complaint adding Loftis as a defendant and alleging, with regard to Loftis, that the loss of Mathews' property "resulted from the negligent or other wrongful conduct of the defendant, Loftis, in demolishing the dwelling owned by Mathews ...." Thereafter, the circuit court entered an order "RECONSIDERING DECLARATORY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT," on July 1, 1999. In this order, the circuit court granted summary judgment in favor of West Virginia Fire based, in relevant part, upon its finding that:

In the instant action, an imposter fraudulently pointed out the structure to be demolished by defendant Loftis, and the same structure was in fact demolished by defendant Loftis, who was under the impression that the owner had requested the demolition. Clearly, the direct cause of the loss was the malicious act by the alleged impersonator who directed that the structure be demolished.

This Court is of the opinion that based on the facts as plead by defendant Mathews there is no negligent act which could give rise to coverage under the insurance policy at issue in this matter. The act complained of by defendant Mathews and for which he seeks coverage under the insurance policy is clearly an act of vandalism or malicious behavior on the part of some third party. This factual scenario leads back to the insurance policy and possible coverage for such vandalism or malicious behavior.

Meanwhile, on June 25, 1999, Mathews filed an *amended* answer asserting, for the

first time, a cross-claim against Loftis alleging that the destruction of his house was "the sole proximate causal result of the negligence, wrongful conduct, and/or fault of Rodney Loftis ... and/or his agents." Loftis responded with a motion to dismiss.

In response to the circuit court's order granting summary judgment to West Virginia Fire, Mathews filed a "MOTION TO ALTER OR AMEND JUDGMENT." Thereafter, the circuit court entered three separate orders on September 7, 1999, disposing of all the claims in this action. In the first order, the circuit court denied Mathews' motion to alter or amend the judgment, finding that Mathews "failed to bring forward any additional evidence or legal authority upon which the previous *Order* of this Court should be disturbed." The second order granted West Virginia Fire's motion for summary judgment on Mathews' counterclaim, finding that Mathews did not substantially prevail in the declaratory judgment action, and that there was "insufficient evidence to continue under the West Virginia Unfair Claims Settlement Practices [Act]." The final order granted Loftis' motion to dismiss on the grounds that Mathews delayed for some time in asserting his cross-claim against Loftis, and that Mathews had failed to seek leave of the court to amend his answer to include the cross-claim. It is from the circuit court's order denying Mathews' motion to alter or amend judgment, and the court's order granting Loftis' motion to dismiss, that Mathews now appeals.

## II.

### STANDARD OF REVIEW

Mathews appeals two separate orders of the Circuit Court of Kanawha County. One order denied *Mathews' motion*, made pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, to alter or amend a judgment. We have previously explained:

"The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ.

---

4. The order was rendered before there was a hearing on either of the summary judgment motions, and before West Virginia Fire filed a response to Mathews' counter-motion for summary judgment.

P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syllabus Point 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

Syl. pt. 1, *Thompson v. Branches–Domestic Violence Shelter of Huntington*, 207 W.Va. 479, 534 S.E.2d 33 (2000). The judgment underlying Mathews' motion to alter or amend granted summary judgment to West Virginia Fire. Thus, our appellate review is *de novo.* " 'A circuit court's entry of summary judgment is reviewed *de novo.*' Syllabus point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 524 S.E.2d 688 (1999). Furthermore, in exercising this plenary review, we must bear in mind that:

> "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

Syl. pt. 1, *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 506 S.E.2d 578 (1998).

The second order herein appealed by Mathews dismissed his cross-claim against Loftis. Our review of that order is also *de novo.*

> " 'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*' Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syllabus point 1, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 488 S.E.2d 901 (1997).

Syl. pt. 1, *Bowers v. Wurzburg*, 205 W.Va. 450, 519 S.E.2d 148 (1999).

Having set forth the appropriate standards for our review, we now consider the issues presented on appeal.

## III.

## DISCUSSION

### A. Coverage

Mathews argues that the circuit court erred in granting summary judgment to West Virginia Fire based upon its conclusion that the direct cause of Mathews' loss was a malicious act by an impersonator. Mathews asserts that, under the efficient proximate cause doctrine, the predominating cause need not be the triggering cause.

West Virginia Fire, on the other hand, argues that the circuit court's ruling should be affirmed as it correctly determined that the efficient proximate cause of the loss sustained by Mathews was the wrongful action of the imposter requesting Loftis to demolish the house, which action amounted to vandalism or malicious mischief, a peril for which Mathews had no coverage.

The efficient proximate cause doctrine was adopted by this Court in *Murray v. State Farm Fire & Casualty Co.*, 203 W.Va. 477, 509 S.E.2d 1 (1998). Pursuant to that doctrine:

> When examining whether coverage exists for a loss under a first-party insurance policy when the loss is caused by a combination of covered and specifically excluded risks, the loss is covered by the policy if the covered risk was the efficient proximate cause of the loss. No coverage exists for a loss if the covered risk was only a remote cause of the loss, or conversely, if the excluded risk was the efficient proximate cause of the loss. The efficient proximate cause is the risk that sets others in motion. It is not necessarily the last act in a chain of events, nor is it the triggering cause. The efficient proximate cause doctrine looks to the quality of the links in the chain of causation. The efficient proximate cause is the predominating cause of the loss.

Syl. pt. 8, *Murray.*

Here, a combination of causes resulted in Mathews' loss: (1) the action of the imposter; (2) Loftis' failure to verify the identity of the person requesting the demoli-

tion of the home; (3) the actual act of demolishing the home. However, we agree with the trial court that the direct, or predominating, cause of the loss in this case was the action of the imposter in arranging the demolition of the house.[5] But for the actions of the imposter, there was no evidence that Loftis would have had a reason to take any action whatsoever toward the destruction of the house in question.

■ Moreover, we agree with the trial court that the action of the imposter was clearly an act of vandalism or malicious behavior. " 'Language in an insurance policy should be given its plain, ordinary meaning.' Syllabus Point 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986)." Syl. pt. 1, *Murray.* Vandalism is generally understood to mean "deliberately mischievous or malicious destruction or damage of property." *Random House Webster's Unabridged Dictionary* 2104 (2d ed.1998). *See also Chambers 20th Century Dictionary* 1436 (1983) (defining "vandal," in part, as "one who destroys what is beautiful ... one who wantonly damages property," and defining "vandalize" as "to inflict wilful and senseless damage on (property, etc.)"); *Webster's Third New International Dictionary of the English Language* 2532 (unabridged 1970) (describing "vandalism" as "willful or malicious destruction or defacement of things of

beauty or of public or private property"). Similarly, the plain ordinary meaning of the term "malicious mischief" is "willful destruction of personal property motivated by ill will or resentment toward its owner or possessor." *Random House Webster's Unabridged Dictionary* 1164. *See also Webster's Third New International Dictionary of the English Language* 1367 (defining "malicious mischief" as "willful, wanton, or reckless damage or destruction of another's property"). *Cf. Chambers 20th Century Dictionary* 761 & 804 (defining "malicious" as "bearing ill-will or spite: moved by hatred or ill-will: mischievous," and defining "mischief" as "an ill consequence: evil: injury: damage, hurt: the troublesome fact: a source of harm: petty misdeeds or annoyance: pestering playfulness ...").

As the circuit court duly noted, Mathews did not purchase coverage for vandalism or malicious mischief. Mathews argues, without legal authority, that the coverages not purchased by an insured should not be considered in deciding whether a particular loss falls within one of the purchased coverages. In this regard, Mathews argues that the destruction of his house was caused by a vehicle,[6] a peril which was covered under his policy. Because the policy did not contain an express exclusion for malicious mischief un-

---

**5.** While the determination of the predominating cause of a loss is generally a question of fact, in the instant case the facts surrounding the demolition of Mathews' house were not contested below. Thus, it was proper, in this instance, for the trial court to determine, as a matter of law, that the action of the imposter was the predominating cause of the destruction of Mathews' house. We note that Mathews has additionally complained that the circuit court failed to consider that Loftis may have concocted the impostor story in an effort to cover an error by his employees (i.e., destroying the wrong house) and avoid liability. This theory, if properly supported on the record, would create a question of fact and preclude summary judgment. However, our review of the record designated on appeal reveals that this theory, which was raised for the first time by Mathews in his "REPLY TO DEFENDANT LOFTIS' and WV FIRE'S RESPONSES TO MOTION TO ALTER OR AMEND JUDGMENT," was simply expressed by Mathews' counsel in briefs submitted to the circuit court, and to this Court, without any supporting documentation or evidentiary basis. Statements

made by lawyers do not constitute evidence in a case. *See, e.g., Crum v. Ward,* 146 W.Va. 421, 457, 122 S.E.2d 18, 38 (1961) (Haymond, Pres., dissenting) ("Every trial judge knows, as every trial lawyer knows, and every appellate court judge should know, that the statements of counsel in an argument are not evidence but are merely the expression of his individual views...."). Consequently, this unsupported theory asserted by Matthews' lawyer is inadequate to raise a material question of fact that would preclude summary judgment.

**6.** On appeal, Mathews also raises the issue of whether the excavator used to raze his house was a "vehicle" as contemplated in his policy of insurance. Because we find that the efficient proximate cause of his loss was the vandalism or malicious mischief of the imposter, a peril for which he had no coverage, we need not address the question of whether an excavator is a vehicle. For the same reason, we need not resolve additional issues raised by Mathews involving the circuit court's interpretation of other portions of the policy.

der the vehicle clause, Mathews contends that his loss should be covered. It is important to note, however, that the policy in question is a "named perils" policy. Unlike an "all-risk" policy that includes all risks that are not specifically excluded in the terms of the contract, a "named perils" policy excludes "all risks not specifically included in the contract." 7 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance 3d* § 101:7, at 101–17, –18 (1997). *See also Ennar Latex, Inc. v. Atlantic Mut. Ins. Co.*, No. 94 CIV. 150 (JFK), 1995 WL 325640, at *5 (S.D.N.Y. May 30, 1995) (explaining that "to recover under a named perils policy, the insured must demonstrate that one of the enumerated perils operated to cause the losses."). Because Mathews failed to purchase coverage for malicious mischief, he possessed no coverage for that peril. Therefore, we find that the circuit court did not err in granting summary judgment to West Virginia Fire and in subsequently denying Mathews' motion to alter or amend that judgment.

### B. Cross–Claim Against Loftis

■ Mathews also argues that the circuit court erred in dismissing his cross-claim against Loftis. Mathews asserts that, because Loftis was already a party to the litigation, he was not prejudiced by the late filing of Mathews' cross-claim. Moreover, Mathews contends that there was no time bar to his filing of the cross-claim as W. Va.Code § 55–2–21 (1981) specifically states that "[a]fter a civil action is commenced, the running of any statute of limitation shall be tolled for ... the pendency of that civil action as to any claim which has been or may be asserted therein by ... cross-claim." Mathews further asserts that Rule 15(a) of the West Virginia Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Loftis responds that the circuit court properly granted his motion to dismiss Mathews'

cross-claim as Mathews failed to comply with the requirements of the West Virginia Rules of Civil Procedure.

We agree with Loftis that this issue is resolved by Rule 15(a) of the West Virginia Rules of Civil Procedure, which states:

Amendments.—A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. *Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party;* and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

(Emphasis added).

Mathews' answer to West Virginia Fire's amended complaint did not contain a cross-claim against Loftis. Consequently, pursuant to Rule 15(a), Mathews was required either to file an amended answer[7] within twenty days after his previous answer was served, or to obtain leave of court or written consent from Loftis to file the amended pleading after the twenty-day period. Mathews' answer to West Virginia Fire's amended complaint was served on March 30, 1999, but he did not file his amended answer until June 25, 1999, well exceeding the twenty-day limit. Under these circumstances, it was incumbent upon Mathews to obtain leave of court or written consent from Loftis to file his amended answer. *Cf. Commercial Credit Corp. v. Citizens Nat'l Bank of Point Pleasant*, 150

---

7. Although Mathews' pleading was simply titled "**DEFENDANT MATHEWS' CROSS–CLAIM AGAINST DEFENDANT LOFTIS**," and did not restate his answer to West Virginia Fire's amended complaint, it was, nevertheless, an amendment to that answer. *See* W. Va. R. Civ. P. 12(b) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be

asserted in the responsive pleading thereto if one is required, ...."). *See also Shaffer v. Charleston Area Med. Ctr., Inc.*, 199 W.Va. 428, 433, 485 S.E.2d 12, 17 (1997) ("This Court [has] pointed out ... that " '[w]e are not bound by the label[s] employed below, and will treat [matters] made pursuant to" the most appropriate rule." ' (citations omitted)).

W.Va. 196, 199, 144 S.E.2d 784, 786 (1965) ("It is true that after a responsive pleading is served leave of the court or written consent of the adverse party *must be obtained* in order to amend the pleadings." (emphasis added)). Mathews failed in both respects.

In addition, it is noteworthy that, although Mathews had knowledge of Loftis' involvement in the destruction of Mathews' house prior to the filing of West Virginia Fire's declaratory judgment action, he nevertheless waited nearly fifteen months after the initiation of the declaratory judgment action before attempting to assert a claim against Loftis. Even when West Virginia Fire amended its complaint to assert its own claim against Loftis. Mathews waited approximately three additional months before attempting to assert his cross-claim. While it is true that Rule 15(a) directs circuit court's that "leave [to amend] shall be freely given when justice so requires," this directive does not absolve a party from his or her obligations under the rule, nor does it allow a party to be unnecessarily lax in asserting his or her claims. We have previously explained that " '[t]he liberality allowed in amendment of pleadings does not entitle a party to be dilatory in asserting claims or to neglect the case for a long period of time.' *Mauck v. City of Martinsburg*, 178 W.Va. 93, 95, 357 S.E.2d 775, 777 (1987) (citation omitted)." *Consolidation Coal Co. v. Boston Old Colony Ins. Co.*, 203 W.Va. 385, 393, 508 S.E.2d 102, 110 (1998).[8]

In the instant case, Mathews utterly failed to follow the procedures required by Rule 15(a) of the West Virginia Rules of Civil Procedure, and has offered no justification for his delay of nearly fifteen months before attempting to assert a cross-claim against Loftis. Under the circumstances presented,

---

8. In the *Consolidation Coal Co.* case, this Court affirmed the circuit court's denial of the plaintiff's motion to amend, finding that the circuit court correctly determined that the plaintiff had been dilatory in delaying approximately sixteen months before filing its motion to amend.

1. It has previously been our unremitting practice to interpret insurance contracts based upon the plain meaning of their terms. *See* syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172

we find the circuit court did not err in granting Loftis' motion to dismiss.

## IV.

### CONCLUSION

For the foregoing reasons, the September 7, 1999, orders of the Circuit Court of Kanawha County are affirmed.

Affirmed.

Justice McGRAW dissents and files a dissenting opinion.

McGRAW, Justice, dissenting.
(Filed Jan. 16, 2001)

In determining that Mathews did not have coverage for the loss he sustained when his house was inadvertently demolished, the majority makes the mistake of construing the *absence* of coverage for malicious or willful conduct as a necessary limitation on coverage that is otherwise clearly provided under the policy. The mistake in this logic is glaring, since the Court has chosen to ascertain the scope of insurance coverage not by the language of the policy itself,[1] but by a provision that has never been made part of the policy at all (or, at best, a provision which has been rendered inoperative as a result of the policyholder's choice to deny a certain form of coverage). In effect, the majority treats an otherwise lifeless policy provision—intended to *provide* coverage if certain prerequisites are satisfied—as a *de facto* exclusion. This approach is obviously flawed.

Nor is there anything in the authority relied upon by the majority that supports such an approach. The case and commentary cited by the majority merely state that a "named perils" policy only provides those coverages specifically enumerated; they do not take the further step, as has been done here, of limiting extant coverage based upon the absence other forms of overlapping coverage. In my view, the insurance policy in

---

S.E.2d 714 (1970) ("Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."); *see also* syl. pt. 2, *Louk v. Isuzu Motors, Inc.*, 198 W.Va. 250, 479 S.E.2d 911 (1996); syl. pt. 1, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992).

question undeniably covered any damage caused by a "vehicle" (as modified by express exclusions), and the fact that the policy did not specifically indemnify against acts of vandalism or malicious mischief in no way detracted from that coverage.

Moreover, since there is no dispute that the Komatsu excavator which destroyed Mathews' house moves on tracks, it is a "vehicle" within the commonly understood meaning of such term. *See Random House Webster's Unabridged Dictionary* 2109 (2d ed.1998) (defining "vehicle," *inter alia,* as "a conveyance moving on wheels, runners, *tracks,* or the like, as a cart, sled, automobile, or tractor") (emphasis added). Consequently, the circuit court erred in granting summary judgment on the issue of whether Mathews' loss was covered under the policy.

I also see no valid reason for the circuit court to have denied Mathews' attempt to lodge a cross-claim against Loftis, where such claim was brought within three months of West Virginia Fire's motion to make Loftis a party.

For the foregoing reasons, I respectfully dissent.