650 S.E.2d 140

John BARBINA, Individually and as Parent of A.B., an Infant, Plaintiff Below, Appellant,

v.

Charles CURRY; Kelley A. Curry; the West Virginia Department of Health and Human Resources; Lori Glover; Clark Sinclair, as Sheriff of Taylor County, West Virginia; and Valley Comprehensive Community Mental Health Center, Inc., Defendants Below, Appellees.

No. 33102.

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 23, 2007.

Decided: Feb. 15, 2007.

LaVerne Sweeney, Grafton, for Appellants.

Boyd L. Warner, Waters, Warner & Harris, Clarksburg, for Appellee, Clark Sinclair Sheriff of Taylor County, West Virginia.

Elisabeth H. Rose, Fairmont, for Appellee, West Virginia Department of Health and Human Resources.

Tamara J. DeFazio, J. Robert Russelll, Pullin Fowler & Flanagan, Morgantown, for Appellee, Valley Comprehensive Community Mental Health Center, Inc.

DAVIS, Chief Justice.

John Barbina, individually and as parent of A.B., an infant, appellants/plaintiffs below (hereinafter "Mr. Barbina"),[1] appeals separate orders of the Circuit Court of Taylor County granting summary judgment to the appellees, West Virginia Department of Health and Human Resources (hereinafter "DHHR"); Clark Sinclair, Sheriff of Taylor County (hereinafter "Sheriff");[2] and Valley Comprehensive Community Mental Health Center, Inc. (hereinafter "Valley").[3] Here,

---

**1.** This case involves sensitive matters. As such, we follow our longstanding practice and use only the initials of the infant plaintiff.

**2.** The briefs indicate that Mr. Sinclair is no longer Sheriff of Taylor County.

**3.** The record indicates that there were three other defendants named in the complaint, but they are not part of this appeal. One of the defendants, Lori Glover, was an employee of DHHR. The circuit court dismissed Ms. Glover from the action. That dismissal order has not been appealed. Two other defendants, Charles Curry and Kelley A. Curry, filed for bankruptcy. It appears that the claims brought against Ms. Curry in this action were discharged by the bankruptcy court. However, the record indicates that

Mr. Barbina contends that genuine issues of material fact are in dispute as to each defendant. Therefore, summary judgment was improper. After a careful evaluation of the record, briefs, and arguments of counsel, we affirm the orders granting summary judgment to each appellee.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Barbina and Kelly A. Curry were once married. However, they subsequently divorced.[4] Either before or during the marriage, the couple gave birth to A.B. on June 21, 1988. After the couple divorced, custody of A.B. was awarded to Ms. Curry.

During the summer of 1998, A.B. was visiting the home of her maternal grandfather, Charles Curry. A.B. was lying on the floor of the living room when Mr. Curry "came into the room and sat on her legs. . . . He then put his hand down her pants and touched between her legs." A.B. told Mr. Curry to stop. He stopped. Within moments of this incident, Ms. Curry returned to the home to pick up A.B. A.B. did not tell Ms. Curry about the fondling incident.

On September 17, 1998, A.B. was undergoing psychological counseling at Valley when she reported the fondling incident to her therapist, Helen Lough.[5] It is undisputed that Ms. Lough reported the incident to Ms. Curry. Valley contended that it reported the incident to DHHR. DHHR denies this, and no evidence exists showing a referral was made.[6]

On November 25, 1999, Ms. Curry invited family members, including Mr. Curry, to her home for Thanksgiving Day. At some point during the family gathering, A.B. went up-

stairs to her bedroom. Mr. Curry followed her. While A.B. was lying on her bed, Mr. Curry approached her and "kissed her and put his tongue in her mouth." A.B. told Mr. Curry to leave, and he did. Several weeks after the kissing incident A.B. informed Ms. Curry about the matter.[7]

On February 6, 2000, A.B. informed Mr. Barbina of the two incidents of sexual abuse by Mr. Curry. Mr. Barbina reported the matter to DHHR on February 7. It is disputed as to whether or not DHHR reported the matter to the Sheriff. However, through the efforts of Mr. Barbina, the State Police were informed of the matter. In 2001, Mr. Curry was indicted on two counts of sexual abuse in the first degree. Mr. Curry eventually pleaded guilty to both charges and on November 21, 2001, he was sentenced to prison to serve consecutive sentences of 1–5 years imprisonment.

On October 31, 2001, Mr. Barbina filed the instant action against DHHR. In 2002, the complaint was amended to add Valley and the Sheriff as defendants. After a period of discovery all of the defendants moved for summary judgment. On March 23, 2005, the circuit court entered an order granting Valley summary judgment. On July 12, 2005, the circuit court entered an order granting DHHR summary judgment.[8] On September 20, 2005, the circuit court entered an order granting the Sheriff summary judgment.

## II.

## STANDARD OF REVIEW

 This case comes to this Court from three orders granting summary judgment. We have indicated that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). This

the dischargeability of the claims brought against Mr. Curry has not been determined.

**4.** The record does not disclose the date of the marriage or divorce.

**5.** The record does not disclose when A.B. began therapy or why she was receiving therapy.

**6.** In October of 1998, Ms. Curry stopped taking A.B. to counseling sessions.

**7.** After the second incident, Ms. Curry confronted Mr. Curry and told him that he could have no further physical contact with A.B.

**8.** On January 20, 2005, the circuit court granted DHHR partial summary judgment on the sexual abuse incident that occurred in the summer of 1998. That order is not the subject of this appeal.

Court has held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Finally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*, 192 W.Va. 189, 451 S.E.2d 755.

## III.

## DISCUSSION

Insofar as this case involves granting summary judgment to three separate defendants, we will examine separately the facts as to each defendant.

### A. Summary Judgment for Valley

■ Mr. Barbina alleged that Valley violated W. Va.Code § 49–6A–2 (2006) (Supp. 2006) [9] by failing to report to DHHR the sexual abuse that occurred in the summer of 1998. W. Va.Code § 49–6A–2 provides "[w]hen any ... mental health professional ... has reasonable cause to suspect that a child is ... abused ..., such person shall immediately, and not more than forty-eight hours after suspecting this abuse, report the circumstances or cause a report to be made to the Department of Health and Human Resources." Valley contends that it did, in fact, report the incident; but, DHHR has denied receiving such report. The circuit court found that, although a dispute existed as to whether Valley made a report to DHHR, this dispute did not preclude granting summary judgment to Valley. In doing so, the circuit court relied upon this Court's decision in *Arbaugh v. Board of Education, County of Pendleton*, 214 W.Va. 677, 591 S.E.2d 235 (2003).

■ In *Arbaugh*, the plaintiff filed an action in federal court against several education and social services defendants for their alleged failure to report abuse as required by W. Va.Code § 49–6A–2. The defendants moved to dismiss the claim for a violation of W. Va.Code § 49–6A–2, arguing that a private civil cause of action did not exist for a violation of the statute. The federal district court judge submitted a certified question to this Court seeking guidance as to whether a private civil cause of action existed under the statute. We answered the certified question in the negative and set forth the following in Syllabus point three of *Arbaugh*:

West Virginia Code § 49–6A–2 (2001) does not give rise to an implied private civil cause of action, in addition to criminal penalties imposed by the statute, for failure to report suspected child abuse where an individual with a duty to report under the statute is alleged to have had reasonable cause to suspect that a child is being abused and has failed to report suspected abuse.

214 W.Va. 677, 591 S.E.2d 235.

In his attempt to avoid *Arbaugh*'s holding, that a private cause of action *does not* exist under W. Va.Code § 49–6A–2, Mr. Barbina has misconstrued language in the opinion. Mr. Barbina contends that *Arbaugh* authorized a negligence cause of action due to egregious circumstances. The language relied upon by Mr. Barbina in *Arbaugh* states:

[W]e have not ignored Mr. Arbaugh's plea to carve out a private cause of action for more egregious situations, such as where an eye-witness has failed to report. Despite the underlying merit to this request, we are bound to refrain from making such policy determinations since " '[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]' " *State v. Richards*, 206 W.Va. 573, 577, 526 S.E.2d 539, 543 (1999), quoting *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). We note that children harmed by such egregious circumstances are not with-

---

9. This statute was amended on two occasions subsequent to 1998. However, the amendments did not affect the duty imposed by the statute prior to the amendments.

out remedy, where in an otherwise proper case a cause of action may be brought based on negligence with the failure to report admissible as evidence in that context.

*Arbaugh,* 214 W.Va. at 683–84, 591 S.E.2d at 241–42. Mr. Barbina contends that the language "an otherwise proper case a cause of action may be brought based on negligence" created a negligence cause of action for a violation of W. Va.Code § 49–6A–2. We reject this argument.

The certified question presented in *Arbaugh* did not ask this Court to decide whether an "intentional" or "negligent" civil cause of action existed under W. Va.Code § 49–6A–2. The certified question asked whether a private civil cause of action existed under the statute.[10] We answered the question in the negative and without qualification. Consequently, *Arbaugh* stands for the proposition that no type of private civil cause of action exists under W. Va.Code § 49–6A–2. The dicta language that Mr. Barbina seeks to rely upon states only that in a properly brought negligence action, a plaintiff may introduce evidence regarding failure to report. However, such evidence is not the basis for a cause of action; rather, it is evidence to support a legally recognized cause of action. Therefore, pursuant to *Arbaugh,* the circuit court was correct in granting summary judgment to Valley.

**B. Summary Judgment for the Sheriff**

 Mr. Barbina contends that the Sheriff had a duty to protect A.B. under the

special relationship doctrine and that harm resulted from the breach of the duty imposed by the special relationship doctrine.[11] This Court has held that "[i]f a special relationship exists between a local government entity and an individual which gives rise to a duty to such individual, and the duty is breached causing injury, then a suit may be maintained against such entity." Syl. pt. 3, *Benson v. Kutsch,* 181 W.Va. 1, 380 S.E.2d 36 (1989). Under *Benson,* a party must establish two factors in order to maintain an action against a local governmental entity: (1) a special relationship and (2) injury from a breach of duty.

The circuit court found that Mr. Barbina failed to establish that a special relationship existed in this case. For the purposes of our disposition of this claim, we will assume for the sake of argument that material issues of fact exist on the special relationship issue.[12] Even with that assumption, summary judgment was appropriate because no evidence existed to show that an injury resulted from a breach of the duty imposed by the special relationship. *See* Franklin D. Cleckley, Robin J. Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure,* § 56(c), at 1256 (2d ed. 2006) ("[I]f one essential element of a non-moving party's case fails, the argument that there may be genuine issues of material fact regarding other elements will not defeat a motion for summary judgment.").

DHHR contended that it notified the Sheriff of the sexual abuse on February 7, 2000. Mr. Barbina argued that he notified the

---

10. The certified question presented in *Arbaugh* stated the following:

> Whether W. Va.Code § 49–6A–2 creates a private civil cause of action, in addition to the criminal penalties imposed by the statute, for failure to report suspected sexual abuse where an individual is alleged to have had reasonable cause to suspect that a child is being sexually abused and has failed to report suspected abuse.

*Arbaugh,* 214 W.Va. at 680, 591 S.E.2d at 238.

11. Mr. Barbina invoked the special relationship doctrine in order to overcome the general immunity the Sheriff has under W. Va.Code § 29–12A–5 (1986) (Repl.Vol.2004).

12. This Court set out the elements of the special relationship doctrine involving a local government entity in Syllabus point 2 of *Wolfe v. City of*

*Wheeling,* 182 W.Va. 253, 387 S.E.2d 307 (1989), as follows:

> To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

Sheriff of the sexual abuse on February 14, 2000. The Sheriff contends that his office did not receive such notice from either DHHR or Mr. Barbina. Assuming, once again, that the Sheriff did receive notices of the sexual abuse on the alleged dates, A.B. sustained no injury on or after those dates. The record in this case unequivocally established that A.B. was sexually abused on or about the summer of 1998, and on November 25, 1999. It is undisputed that A.B. sustained no abuse after November 25, 1999.

The only injuries sustained in this case resulted from the sexual abuse in 1998 and 1999. The Sheriff cannot be held liable for those injuries absent evidence that a special relationship existed prior to the injury in 1998 or 1999. Mr. Barbina has presented no such evidence.

 Mr. Barbina has argued that A.B. endured emotional injury from February 2000 to the date of Mr. Curry's indictment in 2001 as a result of the potential threat of further sexual abuse by Mr. Curry. Mr. Barbina contends that this alleged emotional injury would not have occurred had the Sheriff arrested Mr. Curry in February of 2000. Assuming that such an injury would be sufficient to sustain a cause of action, Mr. Barbina failed to present any evidence of such emotional injury. This Court has indicated that "cases will obviously be infrequent in which 'mental disturbance,' not so severe as to cause physical harm, will clearly be a serious wrong worthy of redress and sufficiently attested by the circumstances of the case." *Ricottilli v. Summersville Mem'l Hosp.*, 188 W.Va. 674, 680, 425 S.E.2d 629, 635 (1992). We have also held that "[a] claim for emotional distress without an accompanying physical injury can only be successfully maintained upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the claim is not spurious

and upon a showing that the emotional distress is undoubtedly real and serious." Syl. pt. 11, *Marlin v. Bill Rich Constr., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996). The only evidence of the alleged emotional injury attributable to the Sheriff during the period February 2000 to the date of Mr. Curry's indictment in 2001 is the statements of Mr. Barbina's counsel in his brief.[13] It is black letter law that "[s]tatements made by lawyers do not constitute evidence in a case." *West Virginia Fire & Cas. Co. v. Mathews*, 209 W.Va. 107, 112 n. 5, 543 S.E.2d 664, 669 n. 5 (2000). *See also Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 61 n. 14, 459 S.E.2d 329, 338 n. 14 (1995) ("[S]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment."). Further, the record indicates that after the last sexual abuse incident on November 25, 1999, A.B. had no further contact with Mr. Curry. Consequently, summary judgment for the Sheriff was appropriate.

### C. Summary Judgment for DHHR

 Mr. Barbina contends that DHHR had a duty to protect A.B. under the special relationship doctrine and that harm resulted from the breach of the duty imposed by the doctrine.[14] We disagree.[15]

 This Court set out the elements of the special relationship doctrine involving a state governmental entity in Syllabus point 12 of *Parkulo v. West Virginia Board of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996), as follows:

The four requirements for the application of the "special relationship" exception to W. Va.Code § 29–12–5 cases are as follows: (1) An assumption by the state governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the state govern-

---

**13.** Mr. Barbina has attempted to piece together evidence of the emotional injury caused by the actual sexual abuse, but no such evidence was presented to show that a distinct emotional injury resulted from Mr. Curry not being arrested until 2001.

**14.** As previously indicated, the circuit court granted DHHR partial summary judgment on the

sexual abuse incident that occurred in the summer of 1998. Mr. Barbina is not contending in this appeal that DHHR should be held liable for the 1998 sexual abuse.

**15.** Mr. Barbina also alleged a cause of action under W. Va.Code § 49–6A–2. We have already indicated that under *Arbaugh* no private civil cause of action exists under that statute.

mental entity's agents that inaction could lead to harm; (3) some form of direct contact between the state governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the state governmental entity's affirmative undertaking.

For the purposes of our disposition of this claim, we need only focus upon the third requirement of the special relationship doctrine, which may be satisfied by showing DHHR had knowledge of the 1998 sexual abuse before the subsequent sexual abuse in 1999.

 The third requirement of the special relationship doctrine requires "some form of direct contact between the state governmental entity's agents and the injured party." Syl. pt. 12, in part, *Parkulo,* 199 W.Va. 161, 483 S.E.2d 507. As a general rule, this requirement contemplates actual contact between a government entity and an injured party. However, we believe that an exception must be established in order to assure the safety of child abuse victims. Therefore, we hold that due to the statutory duty of the Department of Health and Human Resources to investigate reports of child abuse, the "direct contact" requirement of the special relationship doctrine is satisfied through competent evidence showing that a report of child abuse was actually made to and received by the Department of Health and Human Resources. To hold otherwise would immunize DHHR from liability whenever it failed to have actual contact with an abuse victim, because it intentionally or negligently failed to investigate a report of child abuse.

As previously indicated, A.B. was sexually abused in 1998 and 1999. No abuse occurred after 1999. In this case, Mr. Barbina contends that DHHR was notified of the 1998 sexual abuse by Valley on or about September 17, 1998. Therefore, DHHR should have intervened to prevent the sexual abuse that occurred in 1999. DHHR denied receiving knowledge of the sexual abuse prior to February 7, 2000, when Mr. Barbina reported the two incidents of sexual abuse. DHHR has no records of any report prior to that date, and its intake personnel responsible for receiving sexual abuse reports deny receiving a report involving A.B. prior to February 7.

 Mr. Barbina argues that the records produced by Valley contain notations that DHHR was contacted on or about September 17. Although we appreciate the significance of this evidence, it is insufficient to establish a jury question about DHHR's knowledge of the sexual abuse on or about September 17. Valley's records cannot be used to conclusively impute knowledge to DHHR without any additional evidence. The only thing that can flow from such evidence is pure speculation. We have made clear that " '[u]nsupported speculation is not sufficient to defeat a summary judgment motion.' " *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 61, 459 S.E.2d 329, 338 (1995) (quoting *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987)). While it is true that "the nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the evidence, [such evidence] 'cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.' " *Marcus v. Holley,* 217 W.Va. 508, 516, 618 S.E.2d 517, 525 (2005) (quoting *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)). Further, "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic." *Williams,* 194 W.Va. at 60, 459 S.E.2d at 337. Under the circumstances of this case, Mr. Barbina was required to offer "more than a mere 'scintilla of evidence[,]' [he had to] produce evidence sufficient for a reasonable jury to find in [his] favor." *Williams,* 194 W.Va. at 60, 459 S.E.2d at 337. Absent some evidence showing that DHHR actually received notice of the abuse on or about September 17, no special relationship between DHHR and A.B. was triggered until February 7, 2000.[16]

---

16. The circuit court found that even if there was conclusive evidence to show that Valley had notified the "intake worker" for DHHR on or about September 17, no special relationship existed because that notice was not placed in the formal processing procedure used by DHHR. We disagree with the circuit court on this issue. If *any* nonconjectural and credible evidence had been produced to show that an intake worker for DHHR actually received notice of the sexual

**50**

Insofar as A.B. did not suffer any injuries after 1999, Mr. Barbina cannot maintain a cause of action against DHHR for any purported breach of duty under the special relationship doctrine. "A fundamental legal principle is that negligence to be actionable must be the proximate cause of the injury complained of[.]" Syl. pt. 2, *McCoy v. Cohen*, 149 W.Va. 197, 140 S.E.2d 427 (1965). Applying this principle to the instant facts, we conclude that the circuit court was correct in granting DHHR summary judgment.

## IV.

### CONCLUSION

The orders of the circuit court granting summary judgment to West Virginia Department of Health and Human Resources; Clark Sinclair, Sheriff of Taylor County; and Valley Comprehensive Community Mental Health Center, Inc., are affirmed.

Affirmed.

---

abuse, but failed to properly process the report, that would be sufficient to satisfy the third requirement of the special relationship doctrine. In other words, DHHR cannot absolve itself of responsibility because a person it employed failed to carry out his/her assignment to perform DHHR's duty to formally process and investigate a report of sexual abuse. *See* Syl. pt. 7, in part, *State ex rel. Bumgarner v. Sims*, 139 W.Va. 92, 79 S.E.2d 277 (1953) ("Though the doctrine of *respondeat superior* ... is not applicable to the State, the rationale of that doctrine is applicable to a claim against the State arising from the negligence of the State's officers, agents, or employees, acting within the scope of their employment, in the exercise of a governmental function[.]").