# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Johnson Family Trust,**
**Plaintiff Below, Petitioner**

**vs) No. 16-0070**  (Harrison County 13-C-371)

**Antero Resources Corporation,**
**Defendant Below, Respondent**

**FILED**

**November 10, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner and plaintiff below Johnson Family Trust, by counsel Stephen A. Wickland, appeals the December 29, 2015, order of the Circuit Court of Harrison County that denied its motion to alter or amend the court's judgment order entered on March 4, 2015. In that order, the circuit court granted the motion for summary judgment filed by respondent and defendant below Antero Resources Corporation ("Antero"), and denied petitioner's motion to evict Antero and for forfeiture of bond. Antero, by counsel W. Henry Lawrence and Richard M. Yurko, Jr., filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties entered into a Surface Use Agreement ("SUA") dated May 8, 2009, which provided that the SUA

> is for a term of two (2) years from the date hereof and as long thereafter as any of the facilities, as described herein are utilized for the purposes of oil and gas development and transmission. In the event any operations are NOT initiated within two (2) years from the date hereof, this agreement will become null and void.

> . . . .

> Grantee agrees to pay Grantors consideration in the amount of $2,500.00 at the time of the execution of this agreement by Grantors, an additional $14,600.00 if Grantee begins construction of this well-site location. This payment is an "all-inclusive payment and covers payments for all production pipelines, frac-pits, ponds, production facilities, well-site, above or below ground water lines and

1

access roads. This payment also includes payment for damages to trees, pastures and other growing crops.

. . . .

Grantors agree and consent that this SUA will be effective for all shallow and/or deep wells that are drilled on Grantor's [sic] lands from the locations described and shown herein. Grantors agree to approve and sign any and all documents required under the laws and regulations for the State of West Virginia for the drilling of wells from Grantor's [sic] lands.

Grantors agree to allow the use of water for onsite or offsite operations taken from any frac-pit and/or pond constructed by Grantee's operations hereunder. Grantors further agree to allow Grantee to lay temporary above ground water lines over and across the lands to transport water to and from frac-pit(s) or pond(s) owned by Grantee, whether or not said ponds or frac pits are located on or off lease. Grantors agree to approve and sign all documents required under the rules and regulations of the State of West Virginia to allow the transportation of said water.

Grantee's operations may include but are not limited to the drilling, re-entry, maintenance and operation, including the laying, constructing, inspecting, maintaining, repairing, altering, replacing, and relocating a pipeline to transport production off of the lease from any wells to be located on the above described land.

Additionally, under the SUA, Antero agreed to restrict traffic to and from the well-site to only essential personnel.

Petitioner filed a complaint against Antero on August 29, 2013, in the Circuit Court of Harrison County alleging a breach of the SUA. Petitioner alleged that Antero drilled three oil and gas wells on the subject property and that, in or about 2011, all of the wells were completed. Petitioner further alleged that, upon completion of the wells, the property should have been abandoned by Antero and restored to its previous condition but that, instead, Antero and its agents, employees and contractors re-entered the property without permission or compensation to petitioner and began using the land for water purification pools, pipe storage for other wells, storage of equipment, and parking of vehicles. Petitioner alleged that such operations have brought dangerous and poisonous chemicals upon the property, have continued to disturb the surface, and have otherwise utilized the property for purposes not anticipated by the SUA. Antero filed an answer on October 4, 2013.

On June 18, 2014, petitioner filed a motion to evict Antero and for forfeiture of bond in which it alleged that it executed the SUA "believing that [it] was for a two-year term, that their land would be reclaimed and restored, and that they would have full access to all their property

after two (2) years, except for maintenance and upkeep of the wells."[1] Petitioner argued that Antero disregarded its obligation under the SUA to reclaim the property after two years by using the property for storage of water, pipe for other wells, parking vehicles, installing lights, establishing an office "that worked 24 hours a day after the expiration of the two-year term," and blocking the roadway that was used as a logging road for petitioner's land.

On June 26, 2014, Antero filed a motion for summary judgment and memorandum in support thereof and response to the motion to evict and forfeit bond in which it argued that it currently maintains three gas wells on petitioner's land; that the three wells continue to produce gas; that petitioner's belief that the SUA was for a two-year term and that petitioner would have full access to its property after two years is an unreasonable interpretation of the SUA; and that petitioner failed to show that Antero's use of the property was for anything other than what Antero had a right to do under the terms of the SUA. In support of its motion and response, Antero included the sworn affidavit of Timothy R. Rains, Antero's Supervisor of Surface Land Operations who negotiated the SUA with petitioner's agent and, after petitioner filed a response to the motion, filed a reply with a supplemental affidavit from Mr. Rains.

By order entered March 4, 2015, the circuit court granted Antero's motion for summary judgment and denied petitioner's motion to evict and forfeit bond. On March 13, 2015, petitioner filed a motion to alter or amend judgment, which was denied by order entered December 29, 2015. This appeal followed.

This Court has held that

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). In this case, the judgment underlying petitioner's Rule 59(e) motion is summary in nature. Summary judgment is appropriate "only when it is clear that no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 1, in part, *Tolliver v. Kroger Co.,* 201 W. Va. 509, 498 S.E.2d 702 (1997). (Internal quotations and citations omitted). For purposes of summary judgment, a "genuine issue"

> "is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed 'material' facts. A material fact is one that has the capacity to sway the outcome of the

---

[1] In other words, petitioner allegedly believed that it would have full access to its property two years from May 8, 2009, the date the SUA was executed.

litigation under the applicable law." Syllabus point 5, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995).

Syl. Pt. 3, in part, *Greenfield v. Schmidt Baking Co., Inc.,* 199 W. Va. 447, 485 S.E.2d 391 (1997). Once a circuit court is satisfied that summary judgment is proper and has granted such relief, "'[its] entry of summary judgment is reviewed de novo.' Syl. Pt. 1, [in part,] *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. Pt. 1, in part, *McGraw v. St. Joseph's Hosp.,* 200 W. Va. 114, 488 S.E.2d 389 (1997).

In its first assignment of error, petitioner argues that Antero breached the SUA by failing to reclaim the property after the two-year term had expired and that the circuit court erred in failing to address this breach in its March 4, 2015, order. Upon our review, we find no error.

The SUA provides that it

is for a term of two (2) years from the date hereof *and as long thereafter as any of the facilities, as described herein are utilized for the purposes of oil and gas development and transmission.* In the event any operations are NOT initiated within two (2) years from the date hereof, this agreement will become null and void.

(Emphasis added).

Although the contract at issue is a surface use agreement, provisions similar to the one quoted above are commonly found in oil and gas leases and have been addressed by this Court. As such, our case law is instructive.

Known as the "habendum" or "term" clause, its purpose

is to define and limit the duration of the lessee's estate. The habendum clause of virtually all contemporary oil and gas leases provides for a relatively short "primary" term, consisting of a fixed period of time off from a few months to five or ten years, at the end of which period there must be production (or in some leases, the prosecution of drilling operations); the habendum clause also provides that the lease may be preserved for an indefinite period of time beyond the expiration of the primary term "as long thereafter" as oil or gas is produced in paying quantities (or in some leases, for as long thereafter as operations for oil or gas are being conducted).

*McCullough Oil, Inc. v. Rezek*, 176 W. Va. 638, 642-43, 346 S.E.2d 788, 793 (1986) (citations omitted).

In this case, the SUA clearly provides that the term is for two years and "as long thereafter as any of the facilities . . . are utilized for the purposes of oil and gas development and transmission." The evidence demonstrates that Antero is still using the property for purposes of oil and gas development and transmission, as permitted under the SUA, and, thus, Antero has not

4

breached the contract by not reclaiming the property. According to the sworn affidavits of Mr. Rains of Antero, Antero currently maintains three gas wells on petitioner's property under the SUA. These wells, which were constructed within two years of the execution of the SUA[2] and are currently producing gas. The evidence further demonstrated that petitioner's property is being used for oil and gas development and transmission. Petitioner has failed to submit any evidence or legal authority in support of its position that the SUA has expired such that reclamation should have taken place, nor has it cited to any evidence within the appendix record in support of such claim. Indeed, petitioner's argument fails to comport with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure (requiring that appellate briefs "must contain appropriate and specific citations to the record on appeal"). Furthermore, it is beyond cavil that "'[s]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment.' *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 61 n. 14, 459 S.E.2d 329, 338 n. 14 (1995)." *Barbina v. Curry*, 221 W. Va. 41, 48, 650 S.E.2d 140, 147 (2007). *See West Virginia Fire & Cas. Co. v. Mathews,* 209 W. Va. 107, 112 n. 5, 543 S.E.2d 664, 669 n. 5 (2000) (stating that "[s]tatements made by lawyers do not constitute evidence in a case."). As we held in syllabus point three of *Williams,*

> [i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

194 W. Va. at 56, 459 S.E.2d at 333. To carry its burden, the nonmoving party must offer "more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson* [*v. Liberty Lobby, Inc.*], 477 U.S. [242,] at 252, 106 S.Ct. [2505,] at 2512, 91 L.Ed.2d [202,] at 214 [(1986)]." *Williams*, 194 W. Va. at 60, 459 S.E.2d at 337. Petitioner has failed to create a genuine issue of material fact with regard to its allegation that Antero breached the SUA by failing to reclaim the property after two years. Therefore, we conclude that the circuit court did not err in granting summary judgment in favor of Antero on this issue.[3]

---

[2] In his complaint, petitioner avers that Antero began work on the wells on October 13, 2009, August 17, 2010, and May 10, 2011, respectively, the third well having been commenced more than two years after the execution of the SUA. However, petitioner failed to submit any evidence in support of this allegation. In contrast, Mr. Rains's sworn supplemental affidavit submitted during the summary judgment proceedings clearly states that the third well was commenced "on June 30, 2010[,] which is before May 8, 2011."

[3] In a related assignment of error, petitioner argues that the circuit court erred in denying petitioner relief for Antero's purported violations of reclamation requirements set forth in the SUA and the permit issued to Antero by the State of West Virginia. Petitioner contends that, under the SUA, Antero agreed to "[f]ertilize, lime and re-seed disturbed areas with Meadow Mix and mulch if necessary." As support for its claim that the well permit also requires that certain (continued . . .)

Next, petitioner argues that the circuit court erred in failing to find that Antero breached the SUA by using the property for "unauthorized purposes." Petitioner argues that Antero parked "multiple vehicles" on the property after the wells were completed; chemicals were stored on the land; water was stored and removed from the frac-pit pond for wells located off-site; and that lights were installed and an office established. Petitioner argues that these activities were neither authorized nor contemplated under the SUA and that petitioner should be compensated for this unauthorized use of its property.

We find no error. As previously established, petitioner failed to submit any evidence in support of his motion to evict or in response to Antero's motion for summary judgment, including with regard to its claim that Antero has used the property for unauthorized purposes. In fact, a plain reading of the SUA shows that petitioner

> agree[d] to allow the use of water for onsite or offsite operations taken from any frac-pit and/or pond constructed by Grantee's operations hereunder. Grantors further agree to allow Grantee to lay temporary above ground water lines over and across the lands to transport water to and from frac-pit(s) or pond(s) owned by Grantee, whether or not said ponds or frac pits are located on or off lease.

Furthermore, as set forth in the SUA, Antero's "operations may include but are not limited to the drilling, re-entry, maintenance and operation, including the laying constructing, inspecting, maintaining, repairing, altering, replacing, and relocating a pipeline to transport production off of the lease from any wells to be located on the above described land."

---

steps be taken to reclaim the property, petitioner points to an exhibit that was purportedly attached to and referenced in the SUA which, according to the SUA, shows the access roads, layout, and location of the proposed drilling sites and states that "[a]ll cut and fill slopes will be seeded and mulched immediately after construction." However, petitioner fails to present any further explanation or evidence that any of these steps have not been taken or should have been taken at this point, fails to include a copy of the well permit in the appendix record for our review, and fails to dispute Antero's representation that, in fact, it has completed partial reclamation of petitioner's property and is awaiting final federal approval of its plans to conclude reclamation. As we stated in *State, Dept. of Health v. Robert Morris N.,* 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995), "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)). *See State v. Lilly,* 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) (noting that "appellate courts frequently refuse to address issues that appellants . . . fail to develop in their brief."). *See also Ohio Cellular RSA Ltd. P'ship v. Bd. of Pub. Works of West Virginia,* 198 W. Va. 416, 424 n. 11, 481 S.E.2d 722, 730 n. 11 (1996) (refusing to address issue on appeal that had not been adequately briefed). Therefore, we decline to address this assignment of error.

This Court has held that "[w]here there has been a severance of the mineral estate and the deed gives the grantee the right to utilize the surface, such surface use must be for purposes reasonably necessary to the extraction of the minerals." Syl. Pt. 2, *Buffalo Mining Co. v. Martin*, 165 W. Va. 10, 267 S.E.2d 721 (1980). By the same token, "[t]he owner of the mineral underlying land possesses, as incident to this ownership, the right to use the surface in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate." Syl. Pt. 1, *Squires v. Lafferty*, 95 W. Va. 307, 121 S.E. 90 (1924). The SUA shows that it clearly permits Antero's use of water from the frac-pit for onsite or offsite operations. With regard to petitioner's claims that Antero breached the SUA by parking vehicles on the property, storing chemicals, and constructing temporary lighting and a temporary building (that have since been removed), we find that petitioner failed to show that these uses of the surface are not "for purposes reasonably necessary to extraction of the" oil and gas. *Buffalo Mining Co.,* 165 W. Va. at 10, 267 S.E.2d at 722, syl. pt. 2, in part. Thus, we conclude that the circuit court did not err in granting summary judgment in favor of Antero on this issue.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 10, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

7