# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

————————

No. 12-0769

————————

**FILED**

**November 7, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

PATRICIA CHAFIN, ADMINISTRATRIX OF THE
ESTATE OF FREDA MARIE BRADLEY,
Plaintiff Below, Petitioner

v.

FARMERS & MECHANICS MUTUAL
INSURANCE COMPANY OF WEST VIRGINIA,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Logan County
The Honorable Roger L. Perry, Judge
Civil Action No. 10-C-269

**REVERSED AND REMANDED**

_____

Submitted: September 25, 2013
Filed:  November 7, 2013

Carte P. Goodwin, Esq.
James A. Kirby, III, Esq.
Mary R. Rowe, Esq.
Goodwin & Goodwin, LLP
Charleston, West Virginia
**Attorneys for the Petitioner**

James A. Varner, Sr., Esq.
Debra Tedeschi Varner, Esq.
Michael D. Crim, Esq.
McNeer, Highland, McMunn and
Varner, L.C.
Clarksburg, West Virginia
**Attorneys for the Respondent**

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1. "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999).

2. "Language in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled, in part, on other grounds by Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987).

3. "Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. pt. 1, *Prete v. Merchant's Prop. Ins. Co.*, 159 W. Va. 508, 223 S.E.2d 441 (1976).

4. "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 1, *Berkeley Co. Pub. Serv. v. Vitro Corp.*, 152 W. Va. 252, 162 S.E.2d 189 (1968).

i

5.    "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

**Per Curiam:**

Petitioner Patricia Chafin, as Administratrix of the Estate of Freda Marie Bradley, appeals the May 11, 2012, order of the Circuit Court of Logan County that granted summary judgment on behalf of Respondent Farmers & Mechanics Mutual Insurance Company of West Virginia.[1] Ms. Bradley had filed a complaint against the respondent in which she alleged several causes of action arising from the respondent's denial of coverage under an insurance policy that she purchased from the respondent. The circuit court's grant of summary judgment on behalf of the respondent has two bases: the damage to Ms. Bradley's kitchen floor did not constitute a "collapse" as required by the policy, and the alleged collapse was not caused by "hidden decay." For the reasons that follow, we reverse the circuit court's order and remand to the circuit court for proceedings consistent with this opinion.

## I. FACTS

In May 2002, the petitioner's decedent, Freda Marie Bradley, purchased a named perils homeowners insurance policy from the respondent, Farmers & Mechanics

---

[1] Originally, Freda Bradley was the named petitioner. Unfortunately, Ms. Bradley passed away during the pendency of this appeal. Subsequently, Ms. Bradley's daughter, Patricia Chafin, was appointed the administratrix of Ms. Bradley's estate. Counsel for Ms. Chafin thereafter moved that this Court substitute Ms. Chafin for Ms. Bradley, and this Court granted the motion by order dated June 10, 2013.

Mutual Insurance Company of West Virginia.[2] In April 2005, Ms. Bradley filed a claim under the policy for damages to her home as a result of alleged blasting activities nearby. Shortly thereafter, Darren Franck of Advanced Engineering Associates completed an inspection of the home at the request of the respondent. The respondent subsequently sent Ms. Bradley a letter denying her claim accompanied by a copy of Mr. Franck's inspection report which found no evidence of blasting damage to Ms. Bradley's home.[3]

In September 2008, Ms. Bradley filed a second claim under the policy for damage to her kitchen and bathroom floor. Subsequently, Mr. Franck, the engineer, conducted a second inspection of Ms. Bradley's home at the respondent's request, and prepared a report of his findings. In this report, Mr. Franck attributed the damage to Ms. Bradley's kitchen floor to long-term rotting and decay resulting from inadequate perimeter drainage and lack of a vapor barrier. The report assigned damage to the bathroom floor to water leaking from the toilet drain associated with a faulty wax seal. As a result of these findings, the respondent denied Ms. Bradley's claim citing a policy

---

[2] The policy at issue is called a Homeowners 3 Special Form insurance policy. As noted above, the policy is a named perils policy. This Court previously has explained the difference between a "named perils" insurance policy and an "all risk" policy. "Unlike an 'all-risk' policy that includes all risks that are not specifically excluded in the terms of the contract, a 'named perils' policy excludes 'all risks not specifically included in the contract.'" *West Virginia Fire & Cas. Co. v. Mathews*, 209 W. Va. 107, 113, 543 S.E.2d 664, 670 (2000), *quoting* 7 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance 3d* § 101:7, at 101–17,–18 (1997) (additional citation omitted).

[3] The contents of this report will be discussed later in this opinion.

exclusion for water damage below the surface of the ground, fungi, wet or dry rot, or bacteria.

Thereafter, Ms. Bradley filed an action against the respondent in circuit court based on the respondent's denial of Ms. Bradley's insurance claim. In her second amended complaint, Ms. Bradley alleged that in September 2008, her "floor collapsed to the extent that the kitchen became unsafe and unusable. The only thing holding the floor up was the linoleum floor covering."[4] While a collapse is not one of the named perils enumerated in the subject policy, the policy provides additional coverage for a collapse that is caused by one of several express conditions. The policy provision at issue states in pertinent part:

> 8. Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . . b. Hidden decay[.]
>
> . . . .
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

Other than indicating what collapse does not include, the policy does not define the term collapse.

---

[4] The petitioner's second amended complaint includes counts for breach of contract, reasonable expectations, negligence in selling the insurance policy, declaratory judgment, fraud, and negligent misrepresentations.

By order of May 11, 2012, the circuit court granted summary judgment on behalf of the respondent. Significant to this appeal, the circuit court found that "[t]he term collapse is not ambiguous[]" and "[u]nder the plain and ordinary meaning of "collapse", Ms. Bradley's kitchen floor did not collapse." In addition, the court found that even if the term "collapse" were open to interpretation and it could be found that Ms. Bradley's sinking floor is a "collapse," it was not caused by "hidden decay." In support of this finding, the circuit court stated:

> The fact that Ms. Bradley's floor had been sinking over a period of six years before filing a claim goes to prove that Ms. Bradley was aware of the sinking and therefore of the decay. (Ms. Bradley's own testimony also supports the fact that she was aware of the sinking/decay. One example is Ms. Bradley's statement about how items would roll out of the refrigerator when she opened the door.)

The circuit court made these findings without describing the nature of the damage to the Ms. Bradley's kitchen floor for which she sought coverage or defining the term "collapse."

The petitioner now challenges the circuit court's summary judgment ruling.[5]

---

[5] The circuit court also made the confusing finding that "[c]ollapse is not a named peril within Ms. Bradley's insurance policy and there is no coverage for her claim." Regardless of the fact that collapse is not a named peril under the policy, the policy clearly provides additional coverage for a collapse that is caused by, among other things, hidden decay. Therefore, if the petitioner can show that her kitchen floor collapsed as a result of hidden decay, her claim is covered by the subject policy.

4

## II. STANDARD OF REVIEW

This case is an appeal of a summary judgment ruling in which we are called upon to review a circuit court's construction of an insurance policy and whether a term in that policy is ambiguous. This Court previously has stated our standard of review in such a case as follows: "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999).

## III. DISCUSSION

### A. Meaning of the term "Collapse"

The petitioner presents two assignments of error. In her first assignment of error, the petitioner asserts that the circuit court erred in finding that the term "collapse" as used in the subject insurance policy is unambiguous and that her kitchen floor did not collapse.

The petitioner argues that the circuit court's determination that the term "collapse" is not ambiguous is devoid of any legal or factual support. The petitioner notes that the circuit court made its determination without explaining the plain and ordinary meaning of collapse and without offering any factual description of precisely what happened to her kitchen floor. The petitioner also emphasizes that the subject policy does

5

not define the term collapse, and the majority of jurisdictions that have confronted this issue have concluded that a structure does not have to entirely fall to the ground in order to come within the definition of a collapse. Further, the petitioner opines that ambiguous terms in contracts are to be strictly construed against the insurance company and in favor of the insured. The petitioner concludes that the circuit court erred in ignoring the ambiguity in the undefined policy term "collapse," and by subsequently refusing to strictly construe the term "collapse" against the insurer.

The respondent replies that the circuit court properly relied upon the testimony of Mr. Franck, the only engineer to inspect the property, who indicated that at the time of his inspection the floor had not collapsed. In addition, the respondent notes the policy language explaining that collapse does not include settling, cracking, shrinking, bulging or expansion, and Mr. Franck's report stated that the sinking of the floor was associated with settlement. Also, the respondent offers a dictionary definition of collapse which is "to fall down suddenly," and notes that the petitioner admitted that she first noted some sloping in the floor in 2005. Thus, the respondent concludes that there was no sudden collapse of the floor.

We begin our analysis by recognizing that the insurance policy at issue does not define the term "collapse" except to indicate that it "does not include settling, cracking, shrinking, bulging or expansion." Therefore, this Court's first task is to determine whether the meaning of the term "collapse" in the insurance policy at issue is

6

ambiguous. Under our law, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled, in part, on other grounds by Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987). We have held that "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. pt. 1, *Prete v. Merchant's Property Ins. Co.*, 159 W. Va. 508, 223 S.E.2d 441 (1976). However, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 1, *Berkeley Co. Pub. Serv. v. Vitro Corp.*, 152 W. Va. 252, 162 S.E.2d 189 (1968). Finally, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

Regarding whether the term "collapse" is ambiguous or unambiguous, we note that although the circuit court did not expressly define the term, the court construed the term narrowly so as not to include the damage to the petitioner's kitchen floor. The petitioner, on the other hand, urges that this Court adopt a broader definition of the term "collapse" that would include damage that does not amount to a structure's complete

destruction. Our review of the decisions of other courts indicates a split on whether to define the term "collapse" narrowly to include only the complete falling down of a structure or more broadly so that a complete destruction or falling down is not required.[6] This Court previously has recognized that "[a] provision in an insurance policy may be deemed to be ambiguous if courts in other jurisdictions have interpreted the provision in different ways[] [because] . . . 'one cannot expect a mere layman to understand the meaning of a clause respecting the meaning of which fine judicial minds are at variance.'" *Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 485 n.5, 509 S.E.2d 1, 9 n.5 (1998), *quoting* C. Marvel, *Division of Opinion Among Judges on Same Court or Among Other Courts or Jurisdictions Considering Same Question, as Evidence That Particular Clause of Insurance Policy is Ambiguous*, 4 A.L.R.4[th] 1253, § 2[a] (1981). In light of the split among courts regarding the definition of the term "collapse", we conclude that the term is reasonably susceptible to more than one meaning, and is therefore ambiguous.

Having found the term "collapse" ambiguous, our law compels us to strictly construe the term against the respondent insurance company and in favor of the insured. *See* Syl. pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons, supra.* In *Monroe Guaranty Ins.*

---

[6] For example, in *Dominick v. Statesman Ins. Co.*, 692 A.2d 188 (Pa.Super.Ct. 1997), the court found that the term "collapse" in an insurance policy was not ambiguous and meant that a structure must fall together or fall in. For several examples of courts that have found that the term "collapse" as used in an insurance policy can mean something less than a complete falling in, see fn. 8, *infra.*

8

*Co. v. Magwerks Corp.*, 829 N.E.2d 968 (Ind.2005), the Supreme Court of Indiana discussed at length the meaning of the term "collapse" when it is not defined in an insurance policy. The court's discussion offers guidance on the issue before us as follows:

> What constitutes a collapse has been the subject of a number of articles and treatises.[7] Under the traditional definition, a "collapse" is limited to an event that occurs suddenly and results in complete disintegration. 43 Am.Jur.2d *Insurance* § 1282 (2004). This definition typically disallows coverage under an insurance policy where only a "part of a part" of a building falls. *Monroe Guaranty v. Magwerks*, 796 N.E.2d 326, 332 (Ind.Ct.App.2003). In short, under the traditional view, collapse coverage applies only if an insured building is reduced to flattened form or rubble. By contrast, the broader and so-called modern definition, which is followed by a majority of jurisdictions,[8] defines "collapse" as

---

[7] Citing in a footnote Alan R. Miller et al., *What Constitutes a Collapse Under A Property Insurance Policy*, 29 – WTR Brief 20 (2000); Powell on Real Property § 2.02 (Michael Allan Wolf ed., Matthew Bender); Annotation, *What Constitutes "Collapse" of a Building Within Coverage of Property Insurance Policy*, 71 A.L.R.3d 1072 § 3 (1976 & Supp.2002); Paul B. Tarr et al., *Insurance Coverage for Collapse Claims: Evolving Standards and Legal Theories*, 35 Tort & Ins. L.J. 57 (1999).

[8] Citing in a footnote, *inter alia*, *Ercolani v. Excelsior Ins. Co.*, 830 F.2d 31, 34 (3rd Cir. 1987) (predicting that New Jersey would follow other states in holding that collapse requires only "serious impairment of structural integrity"); *Island Breakers v. Highlands Underwriters Ins. Co.*, 665 So.2d 1084, 1085–86 (Fla.Dist.Ct.App.1995) (Cope, J., concurring) (finding collapse coverage applies if there is a "substantial impairment of the structural integrity" of part of the building); *Nationwide Mut. Fire Ins. Co. v. Tomlin*, 181 Ga.App. 413, 352 S.E.2d 612, 615 (1986) (holding that collapse includes any "reasonably detectable serious impairment of structural integrity" because such a definition "more realistically reflects the purposes of the policy"); *Gov't Emps. Ins. Co. v. DeJames*, 256 Md. 717, 261 A.2d 747, 750 (1970) (holding collapse is ambiguous because verb has restrictive meaning and noun has more liberal meaning, including "breakdown in strength," and thus resolving ambiguity in favor of insured to include any serious impairment of structural integrity); *Royal Indem. Co. v. Grunberg*, 155 A.D.2d 187, 189, 553 N.Y.S.2d 527 (1990) (agreeing with "numerical majority of

(continued . . . )

a "substantial impairment of the structural integrity of the building or any part of a building." 43 Am.Jur.2d § 1282.

*Magwerks Corp.*, 829 N.E.2d at 972–73. In strictly construing the term against the respondent and in favor of the insured, this Court finds that the term "collapse" in the subject insurance policy should be construed to mean something less than the complete falling in of Ms. Bradley's kitchen floor and to include substantial impairment of the structural integrity of the floor. Accordingly, we conclude that the circuit court erred in finding as a matter of law that the term "collapse" in the subject insurance policy is not ambiguous and that Ms. Bradley's kitchen floor did not collapse. [9]

---

American jurisdictions [that] a substantial impairment of the structural integrity of a building is said to be a collapse" because to require the building to fall down would be "unreasonable" in light of an insured's duty to protect property from further damage); *Thomasson v. Grain Dealers Mut. Ins. Co.*, 103 N.C.App. 475, 405 S.E.2d 808, 809 (1991) (holding that the word collapse is ambiguous because to "require that the house fall in completely" would render the coverage illusory).

[9] At the end of her first assignment of error, the petitioner briefly asserts that the circuit court erred in denying her separate claim under Section 12 of the subject policy. Section 12.a. provides coverage for fungi, wet or dry rot, or bacteria, and Section 12.b. states:

> The coverage described in 12.a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

In denying the petitioner's claim under 12.a., the circuit court found that "[t]he limited coverage under this provision only applies when the loss is a result of a Peril Insured Against[,] [and] "[a]s discussed above, Ms. Bradley's loss is not the result of a Peril Insured Against, therefore Section 12.a is not applicable."

(continued . . . )

## B. Presence of "Hidden Decay"

The petitioner's second assignment of error is that the circuit court improperly infringed upon the exclusive province of the jury by concluding that the damage to Ms. Bradley's kitchen floor was not caused by hidden decay. The circuit court based its finding on the fact that the Ms. Bradley's kitchen floor had been sinking for a period of several years before she filed her claim.

The petitioner avers that the circuit court wrongly equated knowledge of the effect (the collapse and sinking of the floor) with the knowledge of the cause (the hidden decay) of which the petitioner was not aware. According to the petitioner, Ms. Bradley could not have discovered the hidden decay by reading the 2005 report prepared by Mr. Franck after his inspection of her residence.

The respondent counters that in Mr. Franck's 2005 report, he stated that his inspection revealed past and continual water infiltration which contributed to the settlement of the floor. He also noted that lime had been placed in the crawl space in an attempt to reduce moisture. According to the respondent, Ms. Bradley acknowledged in the course of her deposition that she looked into the crawl space of her house although

---

This Court finds that the circuit properly rejected the petitioner's claim under Section 12.a. While coverage for collapse is an additional coverage under the policy, it is not a peril insured against. Section 12.b. clearly and expressly indicates that the coverage described in 12.a "only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period."

11

she does not recall when. Also, Ms. Bradley admitted that she did not read Mr. Franck's 2005 inspection report and that if she had, she would have seen the reference to water infiltration. In addition, Ms. Bradley conceded that in 2008, when repairs were performed on the property, the repairman advised her that one beam underneath the house was completely rotted out. The respondent notes that Ms. Bradley testified below that she knows that water is a general cause of rot. The respondent concludes that the evidence is sufficient to support the circuit court's finding that the decay that caused the floor settlement was not hidden to the petitioner.

After considering the parties' positions and the facts below, this Court finds error in the circuit court's determination that Ms. Bradley was aware of decay under her kitchen floor based on the fact that her floor had been sinking for a number of years. We agree with the petitioner that just because Ms. Bradley was aware that the floor was sinking, does not mean that she knew the cause of the sinking.

As set forth above, in arguing that Ms. Bradley knew the cause of her sinking floor, the respondent relies heavily on Mr. Franck's 2005 inspection report. Upon reviewing the report, this Court notes that the body of the report consists of an "Executive Summary" of about one-half page; a "Review of Findings" of three pages; and "Conclusions" of about one-half page. The report also includes an "Appendix A" including a diagram of Ms. Bradley's home, and a topographical map of the area; an "Appendix B" containing a study of blasting damage to structures; and "Appendix C"

12

containing a photographic inspection of the home. In addition to the sinking of Ms. Bradley's floor, the report deals with interior cracks to Ms. Bradley's home, the causes of these cracks, and support for Mr. Franck's conclusion that "there is no physical evidence of blasting damage" to Ms. Bradley's home.

With regard to the cause of Ms. Bradley's sinking floor, Mr. Franck states in the Executive Summary portion of the report that "[t]he sinking of the [kitchen] floor is associated with improper framing methods and settlement." In his Review of Findings, Mr. Franck reports that his inspection of the main crawl space of the residence "revealed past and continual water infiltration, which contributed to past settlement. Lime has been placed in the crawl space in an attempt to reduce moisture."[10] Finally, Mr. Franck concluded in the report that "[t]he physical evidence indicates that the sinking floors are associated with improper framing methods and past settlement of the foundation."

Our review of Mr. Franck's 2005 report indicates that the issue of whether the report should have sufficiently informed Ms. Bradley that decay was causing her kitchen floor to sink is a question of fact for a jury. First, we note that the primary purpose of the report was not to determine the cause of Ms. Bradley's sinking kitchen floor but to determine whether local blasting caused damage to her home. Second, the report is rather long and involved and discusses several issues. Third, the report includes

---

[10] The petitioner testified below that she did not place the lime in the crawl space.

several engineering terms which may not be familiar to the average layperson. Finally, while Mr. Franck opines that the sinking of the floor was "associated with improper framing methods and settlement," and that water infiltration "contributed to past settlement," he does not unambiguously indicate that the sinking of the floor was caused by decay.

In summary, this Court finds that the term "collapse" as used in Ms. Bradley's insurance policy should be construed to mean something less than the complete falling in of the kitchen floor and to include substantial impairment of the structural integrity of the floor. We further find that whether Ms. Bradley should have known that decay was causing her kitchen floor to sink is a genuine issue of material fact that must be decided by a jury. Therefore, this Court remands this case for proceedings consistent with this opinion.

## IV. CONCLUSION

For the reasons set forth above, the May 11, 2012, order of the Circuit Court of Logan County that granted summary judgment to Respondent Farmers and Mechanics Mutual Insurance Company of West Virginia is reversed, and this case is remanded for proceedings consistent with this opinion.

Reversed and remanded.

14