**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

**FILED**

**December 4, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ROLAND F. CHALIFOUX, JR., D.O.,**
**Plaintiff Below, Petitioner**

**v.)   No. 25-ICA-66**          (Cir. Ct. of Ohio Cnty. Case No. CC-35-2023-C-11)

**THE HEALTH PLAN OF WEST VIRGINIA, INC.,**
**Defendant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Roland F. Chalifoux, Jr., D.O., appeals the January 23, 2025, order of the Circuit Court of Ohio County, which granted summary judgment in favor of Respondent, The Health Plan of West Virginia, Inc. ("THP"). THP filed a response.[1] Dr. Chalifoux filed a reply. The issue on appeal is whether a genuine issue of material fact existed regarding the terms of Dr. Chalifoux's contract with THP such that the circuit court erred in granting summary judgment.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises from a dispute between Dr. Chalifoux, then a board-certified neurosurgeon who operated an outpatient pain management clinic, and THP, a health insurance provider. THP and Dr. Chalifoux entered into a participating physician agreement (the "Agreement") on January 1, 2022, under which Dr. Chalifoux contracted to provide physician services to THP's members based upon his training, expertise, and board-certification as a neurological surgeon.[2] Under the terms of the Agreement, Dr. Chalifoux was required, among other things, to maintain clinical privileges at a

---

[1] Dr. Chalifoux is represented by Elgine Heceta McArdle, Esq. THP is represented by Kristen Andrews Wilson, Esq., and Katherine R. Herrmann, Esq.

[2] Based on documentation in the appendix record, Dr. Chalifoux and THP entered into their first participating physician agreement in 2009. However, only the Agreement executed in 2022 is at issue in the case on appeal.

"Participating Hospital," meaning a hospital within THP's contracted network of providers that renders services to THP's members.[3]

From 2009 through mid-2022, Dr. Chalifoux had privileges at Wetzel County Hospital ("WCH") in New Martinsville, West Virginia. WCH is a participating hospital as contemplated by the Agreement, and when the Agreement was executed, WCH was the only participating hospital at which Dr. Chalifoux had privileges.

---

[3] For example, Sections 2.1(e) and (f) of the Agreement provide that, "as a condition of participation," a participating physician "will and must at all times":

> (e) maintain staff privileges in good standing at a Participating Hospital, except in cases where physician's specialty does not necessitate such privileges;
>
> (f) otherwise meet The Health Plan credentialing criteria[.]

The THP credentialing criteria are further detailed in THP's Credentialing and Recredentialing Policy, which states:

> Hospital Privileges: The practitioner must have clinical privileges at a participating hospital. Verifications of privileges at the practitioner's primary hospital listed on the practitioner's application will be done. Hospital verifications may be written, oral or verified via the Internet, when available. Oral verification of privileges requires the credentialing representative to complete, sign, date and list the name of the hospital staff providing the information on the Hospital Privilege Verification Form.
>
> Exceptions are as follows and must be approved by the medical director and/or Credentials Committee:
>
> A practitioner whose practice does not require hospital privileges within the scope of his/her practice (such as a dermatologist, audiologist, and non-physician behavioral health practitioners).
>
> A practitioner who is located in The Plan service area but who does not have clinical privileges at a participating facility. Primary care practitioners who fall under an exception must provide written documentation regarding an arrangement with an admitting practitioner who participates in The Plan to care for his/her patients when inpatient care is required and/or utilizes the services of a hospitalist.

On June 16, 2022, WCH revoked Dr. Chalifoux's privileges. Dr. Chalifoux challenged this revocation in state court, but the revocation was upheld in October 2022. With the confirmed loss of his clinical privileges at a participating hospital, THP considered Dr. Chalifoux to be in breach of the Agreement. Accordingly, THP terminated the Agreement with Dr. Chalifoux.[4]

On January 30, 2023, Dr. Chalifoux filed the underlying suit in circuit court, alleging that THP breached the Agreement by wrongfully terminating the Agreement based on a "false assumption" that he was required to maintain hospital privileges. Dr. Chalifoux contended that because he operated an outpatient interventional pain clinic, his specialty did not necessitate that he maintain hospital privileges. During litigation, he argued that the Agreement is ambiguous because it fails to state with specificity which medical specialties require hospital admission privileges. Dr. Chalifoux argued that his practice as an interventional pain management specialist "squarely fits" as the type of specialty that does not necessitate hospital privileges.

The parties exchanged written discovery and took deposition testimony of multiple fact witnesses. THP filed its motion for summary judgment in January of 2025, which the circuit court decided on the briefing. The court found that the Agreement's language was clear and unambiguous in its requirement that Dr. Chalifoux maintain staff privileges in good standing at a participating hospital. When Dr. Chalifoux failed to meet that requirement, the court found that THP unambiguously had the right to terminate the Agreement, unless Dr. Chalifoux qualified for and received approval for an exception from the hospital privileges requirement.

The court found that Dr. Chalifoux did not receive approval for an exception from the hospital privileges requirement, and furthermore, found that even if the Agreement did not require Dr. Chalifoux to seek approval for an exception, THP would have been entitled to terminate the Agreement upon the revocation of Dr. Chalifoux's hospital privileges because his specialty relevant to the contract was neurological surgery, not pain

---

[4] Section 15.3 of the Agreement states, in pertinent part:

The Health Plan may immediately terminate all of Physician's contractual rights under this Agreement if:

(d) The Health Plan determines in its discretion that the Physician does not continue to meet applicable standards for credentialing or re-credentialing.

＊ ＊ ＊

(f) Physician's privileges to practice at any hospital are limited, suspended or terminated[.]

3

management. Furthermore, the court found that by Dr. Chalifoux's own admission, portions of both his neurosurgical and pain management practices required him to maintain hospital privileges. The court concluded that THP was entitled to summary judgment not only for these reasons, but also because Dr. Chalifoux failed to produce evidence of his alleged damages, one of the required elements for his breach of contract claim. Accordingly, in its order dated January 23, 2025, the circuit court granted THP's motion for summary judgment and dismissed the case with prejudice.[5] It is from this order that Dr. Chalifoux now appeals.

Our review of a circuit court's entry of summary judgment is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). "In reviewing a circuit court's order granting summary judgment this Court, like all reviewing courts, engages in the same type of analysis as the circuit court. That is 'we apply the same standard as a circuit court,' reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 42, 829 S.E.2d 35, 42 (2019) (quoting *Fayette Co. Nat'l Bank v. Lilly*, 199 W. Va. 349, 353 n.8, 484 S.E.2d 232, 236 n.8 (1997), *overruled on other grounds by Sostaric v. Marshall*, 234 W. Va. 449, 766 S.E.2d 396 (2014)). With these standards in mind, we turn to Dr. Chalifoux's lone assignment of error.

On appeal, Dr. Chalifoux asserts that the circuit court erred by rejecting his argument that a latent ambiguity in the language of the Agreement defeats summary judgment. Specifically, Dr. Chalifoux contends that the phrase, "except in cases where physician's specialty does not necessitate such privileges" is ambiguous because it fails to define which physician specialties require staff privileges. He argues that ambiguity is made worse when read in conjunction with the provision of THP's Credentialing and Recredentialing Policy regarding exceptions to the privilege requirement. Dr. Chalifoux claims that because the Credentialing and Recredentialing Policy includes a non-exhaustive list of examples of practitioners whose practices may be approved for an exception from the requirement, "such as a dermatologist, audiologist, and non-physician behavioral health practitioners," it fails to provide guidance as to which specialties fall within the exceptions, and that creates more ambiguity. Thus, Dr. Chalifoux asserts that whether his specialty of interventional pain management necessitates hospital privileges is a question of fact that should be decided by a jury and is a basis for this court to reverse the circuit court's summary judgment determination.

We are not persuaded by this argument. First, we note that whether an ambiguity exists is a legal question. *See*, *e.g*., Syl. Pt. 4, *Chafin v. Farmers & Mechs. Mut. Ins. Co.,* 232 W. Va. 245, 751 S.E.2d 765 (2013) ("The question as to whether a contract is

---

[5] The court also noted that, in light of its ruling, it did not need to address THP's argument that Dr. Chalifoux had not adduced any evidence supporting his alleged damages with reasonable certainty as required under the law.

4

ambiguous is a question of law to be determined by the court.") (citation omitted). The mere existence of a disagreement between the parties as to the interpretation of the Agreement does not render its terms ambiguous. *Id*. Furthermore, this Court will not find ambiguity in a contract simply because every term is not explicitly defined. *See, e.g.*, *Blake v. State Farm Mut. Auto. Ins. Co.*, 224 W. Va. 317, 322, 685 S.E.2d 895, 900 (2009) ("The Court has never required every term in . . . any contract . . . to be defined or else be found ambiguous."). Instead, we follow the approach delineated by the Supreme Court of Appeals of West Virginia in *Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1995):

> [t]he term "ambiguity" is defined as language "reasonably susceptible of two different meanings" or language "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]" Syl. pt. 1, in part, *Shamblin v. Nationwide Mut. Ins. Co.,* 175 W. Va. 337, 332 S.E.2d 639 (1985). Only if the court makes the determination that the contract cannot be given a certain and definite legal meaning, and is therefore ambiguous, can a question of *fact* be submitted to the jury as to the meaning of the contract.

Our traditional rule of contract interpretation is that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or [interpretation] but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co*., 147 W. Va. 484, 128 S.E.2d 626 (1962). Furthermore, "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. Pt. 2, *Orteza v. Monongalia Cnty. Gen. Hosp.*, 173 W. Va. 461, 318 S.E.2d 40 (1984).

Upon review of the relevant language of the Agreement, we find no ambiguity. Rather, we find the Agreement clearly and unambiguously requires Dr. Chalifoux to maintain hospital privileges. As discussed *supra*, Sections 2.1(e) and (f) of the Agreement provide that, "as a condition of participation," Dr. Chalifoux, as the signatory physician, agreed that he "<u>will and must at all times</u>":

> (e) maintain staff privileges in good standing at a Participating Hospital, except in cases where physician's specialty does not necessitate such privileges;
> (f) otherwise meet The Health Plan credentialing criteria[.]

(emphasis added). Those credentialing criteria also include maintaining clinical privileges at a participating hospital, pursuant to THP's Credentialing and Recredentialing Policy.[6]

---

[6] Section 10.2 of the Agreement also provides that Dr. Chalifoux, as the participating physician, "agrees to be bound by all policies and/or rules and regulations adopted by The Health Plan (available to Physician upon request)[,]" which would include THP's Credentialing and Recredentialing Policy.

This credentialing policy requirement has two potential exceptions, including that the practitioner's scope of practice does not require hospital privileges, but the pertinent language clearly states that the exceptions "must be approved by the medical director and/or Credentials Committee." Furthermore, Section 15.3(f) of the Agreement provides that THP is entitled to immediately terminate Dr. Chalifoux's contractual rights if his "privileges to practice at any hospital are limited, suspended, or terminated."

It is undisputed that Dr. Chalifoux had staff privileges in good standing at WCH when he contracted with THP in January 2022. It is also undisputed that he did not maintain those privileges once they were revoked later that year. There is no evidence in the record that Dr. Chalifoux ever sought or obtained approval for an exception to this requirement as described in the Credentialing and Recredentialing Policy. Regardless, however, we find that THP was entitled to immediately terminate Dr. Chalifoux's contractual rights pursuant to Section 15.3(f) because his privileges to practice at WCH were revoked. This provision of the Agreement is not dependent on Dr. Chalifoux's medical specialty or scope of practice; rather it clearly and unambiguously confers a right of immediate termination to THP if his privileges at any hospital are limited in any manner. Therefore, based on the plain reading of the Agreement, we find no error in the circuit court's determination that THP was within its contractual rights when it terminated the Agreement upon notification that Dr. Chalifoux's privileges at WCH were revoked.[7]

Accordingly, finding no basis to disturb the circuit court's January 23, 2025, order, we affirm.

Affirmed.

**ISSUED:** December 4, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[7] We need not address Dr. Chalifoux's remaining argument regarding whether expert testimony was necessary to prove his alleged damages arising from his breach of contract claim against THP, as it is mooted by the foregoing.